MORTIMER SHAY, plaintiff in error, *v.* THE PEOPLE, defendants in error.

Conviction of petit larceny does not render the person convicted incompetent to testify as a witness, within the provision 2 *R. S.,* 701.

An exception to an improper question is not available on error, where the answer of the witness was a denial of his ability to give the information sought by the question.

In an indictment for murder, it was charged "that the said M. S. a certain knife, which he, the said M. S., in his right hand then and there had and held, him, the said J. L., in and upon the forehead, then and there willfully and feloniously and of his malice aforethought, did beat, strike, stab, cut and wound, giving unto the said J. L., then and there, *with the knife aforesaid,* in and upon the forehead of him, the said J. L., one mortal wound," &c., &c. It was held, on error, that the clerical omission of the word "with," before the words "a certain knife," did not vitiate the indictment, the offence being sufficiently charged in other clauses of the indictment.

THIS case came before the court on writ of error. By the return it appeared that on the second day of December, one thousand eight hundred and fifty-nine, an indictment for mur-

der, in the following form, was found against the plaintiff in error, in the New York Oyer and Terminer:

*City and County of New York, ss:*

The Jurors of the People of the State of New York, in and for the body of the city and county of New York, upon their oath, present:

That Mortimer Shay, late of the first ward of the city of New York, in the county of New York aforesaid, on the twenty-third day of November, in the year of our Lord one thousand eight hundred and fifty-nine, at the ward, city and county aforesaid, with force and arms, in and upon one John Leary, in the peace of the People of the State then and there being, willfully and feloniously, and of his malice aforethought, did make an assault.

And that the said Mortimer Shay,     a certain knife, which he, the said Mortimer Shay, in his right hand then and there had and held, him, the said John Leary, in and upon the forehead, then and there willfully and feloniously, and of his malice aforethought, did beat, strike, stab, cut and wound, giving unto the said John Leary, then and there, with the knife aforesaid, in and upon the forehead of him, the said John Leary, one mortal wound, of the breadth of one inch, and of the depth of three inches, of which said mortal wound he, the said John Leary, at the ward, city and county aforesaid, from the said twenty-third day of November, in the year aforesaid, until the twenty-sixth day of November, in the same year aforesaid, did languish, and languishing did live; and on which said twenty-sixth day of November, in the year aforesaid, the said John Leary, at the ward, city and county aforesaid, of the said mortal wound, did die.

And so the jurors aforesaid, upon their oaths aforesaid, do say that he, the said Mortimer Shay, him, the said John Leary, in the manner and form, and by the means aforesaid, at the ward, city and county aforesaid, on the day and the year aforesaid, willfully and feloniously, and of his malice aforethought, did kill and murder, against the form of the statute in such

case made and provided, and against the peace of the People of the State of New York, and their dignity.

NELSON J. WATERBURY,
*District Attorney.*

On the 16th day of January, 1860, the defendant was arraigned in said court on said indictment, and pleaded not guilty thereto. The issue so joined came up to be tried on the first day of February, 1860, before Mr. Justice *Ingraham,* and a jury was duly impanneled to try said issue. The prosecution called, beside other material witnesses, Stephen Leary, a brother of the deceased, who testified that he witnessed the occurrences which resulted in the death of the deceased. This witness, as also others, testified to the circumstances immediately connected with the homicide of the deceased. He testified that he (the witness) was then in his eighteenth year. On the cross-examination of the witness, he admitted that he had been previously convicted of burglary, in the Court of General Sessions of the Peace, in and for the city and county of New York, and that he had been sentenced to the House of Refuge. The witness further testified that he had not been sent to the House of Refuge at any other time. The counsel for the prisoner then procured from the clerk of said Court of General Sessions a copy of the record of the conviction of said Stephen Leary, of petit larceny, duly certified by the said clerk of the said Court of General Sessions, and introduced the same in evidence, which said certified copy of said record of conviction is in the words and figures following:

"At a Court of General Sessions of the Peace, holden in and for the city and county of New York, at the City Hall of the said city, on Tuesday, the 22d day of June, in the year of our Lord one thousand eight hundred and fifty-eight. Present, the Honorable George G. Barnard, Recorder of the city of New York, Justice of the Sessions. The People of the State of New York *v.* Stephen Leary. On conviction by confession of petit larceny, goods, &c., of Thomas E. Stuart. Whereupon it is ordered and adjudged by the court that the said Stephen

Leary, for the misdemeanor aforesaid, whereof he is convicted, be sent to the House of Refuge, there to be dealt with according to law. A true extract from the minutes. Henry Vandervoort, Clerk. (Indorsed)—N. Y. General Sessions of the Peace.— The People of the State of New York *v.* Stephen Leary.— Copy of Sentence.—June 22d, 1858.—House of Refuge."

The District Attorney hereupon admitted that the said witness, Stephen Leary, was the person described in said certified copy of the record of the conviction. The counsel for the prisoner thereupon moved to strike out the evidence of said Stephen Leary. The court denied said motion, and refused to strike out the evidence of said Stephen Leary, to which the counsel for the prisoner then and there duly excepted. Testimony of other witnesses for the prosecution was given. Among the witnesses for the defence, one Thaddeus Spencer was called, who testified, among other things, that he saw the prisoner at about ten o'clock in the forenoon of the day when the homicide of the deceased occurred, and about three hours after the homicide occurred; that at this time the prisoner was cut behind the right ear, apparently by a knife or some sharp instrument, and the wound was bleeding freely. The witness further testified that he also saw at that time a cut upon the hat of the prisoner; it was claimed by the defence that this cut was made by the deceased, before the prisoner used a knife upon the deceased, and by the prosecution that the wound had been inflicted after the deceased had been stabbed by the prisoner (either by the brick thrown at him by Stephen Leary, or in the mode testified to by another witness). On cross-examination by the District Attorney, the following question was put to the witness:

*Q.* Do you know that the prisoner had a cutting match with any one previous to the killing of Leary?

To this question the counsel for the prisoner duly objected. The court overruled the objection, and allowed the question; to which the counsel for the prisoner then and there duly excepted.

The witness answered: I do not.

Shay *v.* The People.

Other testimony was given by the defence and prosecution, after which the case was summed up by the counsel for the defence and prosecution, respectively. The judge then charged the jury, who rendered a verdict of guilty. The prisoner was sentenced to be executed on the 20th day of April, 1860. Mr. Justice Ingraham granted a stay of proceedings in the following form, indorsed upon the writ of error:

I allow the within writ, and I do direct that the same is to operate as a stay of proceedings on the judgment upon which such writ is brought.

(Signed)

D. P. INGRAHAM, *Justice.*

Dated New York, February 25th, 1860.

*Henry L. Clinton*, for plaintiff in error.

I. The learned judge on the trial erred in refusing to strike out the testimony of Stephen Leary. To this ruling defendant excepted.

It appeared by the record of conviction introduced in evidence, that the witness had been convicted of petit larceny, and sentenced therefor to the House of Refuge.

Petit larceny is a felony at common law. (1 *Hale's Pl. Cr.*, 530; 1 *Hawk. P. C.*, 146.)

By the common law, a person convicted of petit larceny was not a competent witness. (1 *Phil. Ev.*, 30.)

In *Ward* v. *People* (3 *Hill*, 398), Nelson, Ch. J., on this subject observes: "It was doubtless intended by the Legislature to reduce the offence of petit larceny to the grade of a misdemeanor; but I am inclined to think they did not accomplish their object. The statute declares that 'Every person who shall be convicted of stealing &c., the personal property of another, of the value of twenty-five dollars or under, shall be adjudged guilty of petit larceny, and shall be punished by imprisonment in the county jail,' &c. (2 *R. S.*, 691, § 1.) The crime is felony at common law (2 *East. Cr. L.*, 736; 3*d Chitty's Cr. L.*, 924), and the only provision in the statute that can go to change the

common law character of the offence, is that which declares the term 'felony,' when used in any statute, shall be construed to mean an offence for which the offender, on conviction, would be punishable by death, or by imprisonment in a State Prison. (2 *R. S.*, 702, § 30.) This provision defines statute felonies, *but does not interfere with those existing at common law, untouched by the statute, of which the offence of petit larceny is one.*"

In the case of *Carpenter* v. *Nixon* (5 *Hill*, 260), the defendant's counsel, for the purpose of *impeaching the credit of a witness* (not for the purpose of having the testimony stricken out, as in the case at bar), who had been sworn and examined for the plaintiff, offered in evidence a record of the witness' conviction upon a charge of petit larceny. The plaintiff's counsel objected that the evidence was inadmissible, and the court sustained the objection. This ruling was held wrong, and a new trial was granted. The only point before the court was, whether it was competent to impeach the credit of a witness in this way. The court did not, and could not, decide anything beyond this. It could not decide that the witness was competent, for no objection to his competency was raised. The observations of the judge who delivered the opinion, on the subject of the competency of the witness, are entirely *obiter.*

The statute provides that "no person sentenced upon a conviction for felony, shall be competent to testify," &c. (3 *R. S.*, 5*th ed.*, 988, § 33.)

This was so before the statute. The same section provides that "no sentence, upon a conviction for any offence other than a felony, shall disqualify or render any person incompetent to be sworn," &c.

Although it is provided (*Ib.*, 989, § 40) that "the term 'felony,' when used in this act, or in any other statute, shall be construed to mean an offence for which the offender, on conviction, shall be liable by law to be punished by death, or by imprisonment in a State Prison," yet it has been held that petit larceny, for which, on conviction, a party is not liable to be punished "by imprisonment in the State Prison," is a felony.

It has also been held (*Keyser* v. *Hardbeck*, 3 *Duer*, 373), that notwithstanding the principle that if " A. buy goods of B., the latter having obtained them by a felony, no title passes; yet if one obtain goods by false pretences, and sell them to a *bona fide* purchaser, notwithstanding the seller is liable by law to be punished" \* \* \* "by imprisonment in State Prison," the purchaser under such circumstances acquires a good title. Thus it would seem that the liability, upon conviction, to be sent to the State Prison, is not the test as to whether a particular crime be or be not a felony.

In *The People* v. *Adler* (3 *Park. Cr. R.*, 249), it was held at general term that the common law rule that petit larceny is a felony, has not been changed by the Revised Statutes. The defendant, on the trial of an indictment for assault and battery, offered to prove that the complainant had been guilty of petit larceny, and that the alleged assault and battery consisted in arresting him therefor. It was conceded that if the complainant had been guilty of a felony, the defendant had a right to arrest him without warrant. The court below held that petit larceny was a misdemeanor, and therefore the defendant had no right to arrest the complainant without warrant, and accordingly excluded the proposed evidence. The Supreme Court held this ruling to be wrong, *on the ground that petit larceny was still a felony*, and on this ground granted a new trial. Here the point was expressly adjudged, that petit larceny is still a felony, as at common law.

II. The learned judge erred in allowing the District Attorney to put the question to the witness, Spencer, " Do you know that the prisoner had a cutting match with any one previous to the killing of Leary ?"

The bearing of this question was to permit the prosecution to establish the violent character of the prisoner, by proving particular acts of violence.

Even were the prosecution allowed to prove bad character, it was not competent to do it in this way.

III. The indictment is fatally defective; it does not disclose a criminal offence within the rules of criminal pleading; it

does not disclose facts sufficient to give the court below juris-
diction.

There is no allegation that Shay struck the blows which
caused death. There is an averment that "a certain knife"
* * * "did beat, strike, stab," &c., but it is nowhere al-
leged that Shay *directed or propelled the knife*.

On the subject of indictments, in *Chitty's Criminal Law*, 172,
it is observed, in speaking of the greater strictness required in
criminal than in civil pleadings, "for technical objections have
been much more frequently admitted to prevail in criminal
than in civil pleadings, and it was expressly laid down by Lord
Mansfield, that a greater strictness is required in the former
than is necessary in the latter."

"Time as well as place, ought in general not merely to be
mentioned at the beginning of the indictment, but to be re-
peated to every issuable and triable fact,"    *    *    *
"but after the time has been once named with certainty, it is
afterwards sufficient to refer to it in the words *then and there*,
which have the same effect as if the day and year were actu-
ally repeated." (1 *Chitty Cr. L.*, 219, 220.)

By bearing in mind this principle, for the purpose of pro-
perly dividing the averment, it will be perceived that the fol-
lowing analysis of the only count in the indictment is correct.
The indictment charges:

1st. That Mortimer Shay made an assault upon John Leary.

2d. That Mortimer Shay held a certain knife in his right
hand.

3d. That a certain knife "did beat, strike, stab," &c., said
John Leary.

4th. That deceased received a mortal wound with the knife
aforesaid.

5th. That of said mortal wound the deceased died.

(The above are the only issuable facts averred.)

6th. The formal conclusion that Mortimer Shay, "in the
*manner and form, and by the means aforesaid,*"    *    *    *
"did kill and murder," &c.

The following is the language of the indictment setting forth the assault, which is the first averment:

"That Mortimer Shay, late of the first ward of the city of New York, in the county of New York aforesaid, on the twenty-third day of November, in the year of our Lord, one thousand eight hundred and fifty-nine, at the ward, city and county aforesaid, with force and arms, in and upon one John Leary, in the peace of the People of the State, then and there being, willfully and feloniously, and of his malice aforethought, did make an assault."

This is the first issuable fact.

The second issuable fact is: That Mortimer Shay held a knife in his right hand, which is set forth in the following language: "A certain knife which he, the said Mortimer Shay, in his right hand then and there had and held."

The third issuable fact set forth in the indictment, is that a certain knife did beat, strike, stab, &c., John Leary. This issuable fact is set forth in the following language: "And that the said Mortimer Shay, a certain knife which he, the said Mortimer Shay, in his right hand then and there had and held, him, the said John Leary, in and upon the forehead, then and there willfully and feloniously, and of his malice aforethought, did beat, strike, stab, cut and wound."

This third issuable fact should have been, "that Mortimer Shay, *with* a certain knife, did beat, strike, stab," &c. The absence of the word *with* destroys the *gravamen* of this averment. This averment is the *gist—the essence—the soul of the whole indictment.* Unless it is here charged that Mortimer Shay, "cut, thrust," &c., that allegation is nowhere made; without supplying the word *with,* the language contained in this count cannot be forced to convey the idea that defendant inflicted the violence which caused death.

This averment contains a complete sentence, to wit, a nominative, a verb, and an objective case. This sentence, in order to determine what it means, should be construed by itself. It contains the allegations (and none other), in substance, that Mortimer Shay held a knife in his right hand, and that "a cer-

tain knife" (not Mortimer Shay), "in and upon the forehead"
of "John Leary,"   *   *   *   "did beat, strike, stab," &c.
This entire averment must be taken as it is, or be stricken
out as surplusage.   It cannot be stricken out as surplusage, for
then there would certainly be no averment (even if my criti-
cism of this language is all wrong) that Mortimer Shay struck
the fatal blow ; and if there be no such averment, then clearly
it is nowhere charged that defendant caused the death.   If the
averment must stand as it is, then there is no charge against
the defendant, except that he held the knife in his right hand.
(And even this not well pleaded.)

In an indictment for homicide, it is necessary to set forth
the means causing the death of the deceased. (1 *East's Pl.
Cr.*, 341; 1 *Hawk.*, ch. 23, § 84; 13 *Price*, 172.)

In 1 *East's Pl. Cr.*, 341, it is said : "*It is essentially necessary
to set forth particularly the manner of the death, and the means by
which it was effected, and an omission in this respect is not aided
by a general conclusion that the defendant so murdered,*" &c.

" An indictment of murder or manslaughter hath these cer-
tainties and requisites to be added to it more than other indict-
ments, for it must not only be *felonice*, and ascertain the time
of the act done, but must also, 1. Declare how, and *with what
it was done*, namely, *cum quodam gladio.*" (2 *Hale Pl. Cr.*, 185.)

According to *Wharton's Am. L. Homicide*, 260, where a
knife is used in causing death, it is necessary to use in that
part of the indictment now under discussion, the words " *with*
a certain knife," " which he, the said A. B., in his right hand
then and there had and held." (*Ib.*, 267.)

According to all the elementary authorities and books of
precedents, the word " *with*," in this connection, is indispen-
sable.

The following are among the cases where it has been held
that the omission of a single word, not more important than
the word " with," in this case, was fatal on motion in arrest of
judgment.

In an indictment for passing counterfeit money, which
charged that the defendant "feloniously utter," dispose and

Shay *v.* The People.

pass, &c., omitting the word "did" before "utter," was held bad, and the court arrested the judgment on the ground of uncertainty, no charge being made that the prisoner did the act. (*State* v. *Holden*, 2 *McCord*, 377.)

In an indictment for subornation of perjury, the omission, even by mistake, of the verb implying that the witness charged to have been suborned, *testified*, is fatal on motion in arrest, *and cannot be supplied or cured by intendment.* (*State* v. *Leech, Jr.*, 27 *Vt.* [1 *Will.*], 317.)

An indictment against a thief and a receiver of stolen goods, jointly, which the first "feloniously did steal, take and carry" the goods, and that the second feloniously received the goods, knowing them "to have been feloniously stolen, taken and carried *away* as aforesaid," is insufficient, for want of adding "away" after "carry," to support *a judgment against either defendant.* (*Commonwealth* v. *Adams et al.*, 7 *Gray R.*, 43.)

The following are among the instances in which it has been held that the use of a wrong word, by mistake, in an indictment, was fatal:

An indictment for receiving alleged, by mistake, that the *prosecutor*, instead of the prisoner, knew that the goods were stolen.

The defect was not noticed till after verdict, when a motion was made in arrest of judgment, but the court below then amended the indictment.

*Held*, that the amendment could not be made after verdict, and that the *indictment was bad in arrest of judgment.* (*Reg.* v. *Larkin*, 6 *Cox's Cr. Cases*, 377.)

A count in an indictment for murder, charging that the prisoner did strike the deceased "on the *left* temple, giving him a mortal wound on the *right* temple," &c., is inconsistent and void. Judgment arrested. (*Dias* v. *State*, 7 *Blackf.*, 20.)

An indictment alleged that the prisoner "broke and entered the *store* of one Merrill, and certain goods from the *shop* aforesaid, then and there being, then and there in the shop aforesaid, feloniously did steal, take and carry away." It was *held*, that the words "store" and "shop" were not synonymous; that

the word "shop," being *descriptive* of the place where the larceny was committed, could not be rejected as surplusage, and that the indictment was fatally defective. (*State* v. *Canney*, 19 N. H., 135.)

An indictment against one for willfully obstructing. the engine of a railroad corporation, was held fatally defective, because it used the words "railroad *company*," instead of "railroad *corporation*." Judgment was arrested on this ground. (*State* v. *Mead*, 27 *Vt.* [1 *Will.*], 722.)

The following additional illustrations of the fatality of defective averments will show how strict are the rules of criminal pleading, with reference to indictments:

Where the defendant was found guilty of an attempt to commit a rape, and the indictment alleged the design was to be accomplished *violently* instead of by *force.* Judgment was arrested. (*State* v. *Blake*, 39 *Maine R.* [4 *Heath*], 322.)

An indictment charged that the defendant, on the 25th of March, 1841, committed the crime of adultery with E. W., the wife of L. H. W., she being a married woman, and the lawful wife of said L. H. W. *Held*, that the indictment did not sufficiently allege that she was a married woman, *when the alleged offence was committed.* (*State* v. *Thurston*, 35 *Maine R.* [5 *Reddington*], 205.)

Where it was averred that the offence was committed "on or about" a specified day, it was held that the words "on or about" were fatal to the averment, on the ground that it was a rule of criminal pleading that every *issuable fact* should be alleged to have occurred on a specific day. A motion to amend was denied, on the ground that the error was not one of form, but was a matter of substance. (*State* v. *Barker*, 34 *Maine R.* [4 *Reddington*], 52.)

Where a statute makes criminal the doing of the act "willfully and maliciously," it is not sufficient for the indictment to charge that it was done "feloniously and unlawfully," or "feloniously, unlawfully and willfully." These latter terms not being of the precise import of those used in the statute, it was held that this defect was fatal, on a motion to quash, or upon

demurrer, or upon a motion to *arrest of judgment.* (*State* v. *Gove and wife*, 34 *N. H. R.* [5 *Fogg.*], 510.)

An indictment describing the things stolen, as "three dollars in divers pieces of silver, current in this State, and of the lawful value of three dollars," is bad on error. (*Lord* v. *State*, 20 *N. H. R.*, 404.)

Judgment will be arrested if the indictment be so framed as to leave it doubtful which, of two or more acts charged, the party accused is legally required to defend. (*State* v. *Smith*, 20 *N. H. R.*, 399.)

Where a defendant was indicted, and the charge was alleged in the words " taken upon himself to do " the act complained of, it was held that the indictment was fatally defective, as it did not contain, in the words "taken upon himself," a sufficient averment that the defendant committed the act or offence sought to be charged. (*State* v. *Perris*, 2 *Bailey*, 17.)

In delivering the opinion in this case, the court holds the following language : " There is no affirmative allegation that the defendant did the act charged, nor is it supplied by the averment that *he did take upon himself* to do it. One may take upon himself to do an act *in futuro*, or one which he may be actually unable to perform."

An indictment for murder, which states the death to be by striking and beating the deceased with a piece of brick, is not supported by proof that the prisoner knocked him down with his fist, and that the death was caused by the deceased striking his head, by falling on a piece of brick in consequence of the blow. (*Rex* v. *Kelly*, *Cox C. L.* [75 *R. & M. C. C.*], 113 ; *Rex* v. *Wrigley*, 1 *Lew. C. C.*, 193 ; 1 *Lew. C. C.*, 127.)

Where the death arises from any wounding, beating or bruising, it is said that the word " struck " is essential, and the wound or bruise must be alleged to have been *mortal ;* nor is the latter word supplied by the allegation, which is at all times necessary, " that the deceased died in consequence of the violence inflicted upon him." (1 *Chitty's Cr. L.*, 243.)

IV. The defect in the indictment is not cured by the formal conclusion, " and so the jurors aforesaid, upon their oath afore-

said, do say that he, the said Mortimer Shay, him, the said John Leary, *in the manner and form, and by the means aforesaid,*" \* \* \* "did kill and murder," &c.

Where, in an indictment, it is not positively averred that the prisoner did the act, such omission cannot be remedied by concluding with an averment of the *scienter.* It will be a fatal defect in the indictment. (*State* v. *Holden,* 2 *McCord,* 377.)

On this point Woodward, J., in *Lutz* v. *Commonwealth* (29 *Penn. R.*, 445), observes: "The elementary writers all agree that a charge substantially defective is not to be helped out by this formal conclusion. And it must indeed be so, for in strictness of speech the reference '*and so,*' is to charge as laid, and if that does not amount to murder, these customary words cannot make murder of it."

V. The defect in question in the indictment is not cured by verdict.

The third averment in the indictment, that "a certain knife" \* \* \* "cut, thrust, &c., John Leary," cannot be rejected as surplusage, nor can the word "*with*" be supplied by intendment. It is a part of the description of the offence.

"Defective description of the offence charged is not one of the points in which an indictment is cured by a verdict, but the same is equally fatal upon a motion in arrest of judgment, as upon demurrer or a motion to quash." (*State* v. *Gore; State* v. *Cars,* 34 *N. H.*, 510.)

Here the words "feloniously, unlawfully and maliciously," were held not equivalent to "willfully and maliciously."

If all the facts alleged in an indictment may be true, and yet constitute no offence, the indictment is insufficient, and a verdict does nothing more than to verify the facts charged. (*State* v. *Godfrey,* 11 *Shep.*, 232.)

"Where the defendants confess themselves guilty *in manner and form,* as charged against them in the indictment, if no offence against the law is charged, they have not confessed themselves guilty of any." (*Fletcher* v. *State,* 7 *Eng.*, 169.)

VI. The defect in this indictment is not cured by the following section of the Revised Statutes:

· " § 52. No indictment shall be deemed invalid, nor shall the trial, judgment or other proceedings thereon be affected."

1. By reason of having omitted the addition of the defendant's title, occupation, estate or degree; or by reason of the misstatement of any such matter, or of the town or county of his residence, where the defendant shall not be misled, or prejudiced by such misstatement; or,

2. By the omission of the words " with force and arms," or any words of similar import; or,

3. By reason of omitting to charge any offence to have been committed contrary to a statute, or contrary to several statutes, notwithstanding such offence may have been created, or the punishment thereof may have been declared, by any statute; or,

4. *By reason of any other defect or imperfection in matters of form, which shall not tend to the prejudice of the defendant.* (2 *R. S.*, 728, § 52.)

The omission complained of, as already shown, is material, and an omission of what is thus material *in point of law, does tend to the prejudice of the defendant.* The above statute does not cure a material omission.

The kind of defects which this statute remedies, will be best observed by referring to some of the cases decided under it.

*Held,* that the words " with intent to extort and gain from him, the said A., a large sum of money," necessarily implied that it was A's property, and that the words " belonging to the said A.," were unnecessary. (*Diggs* v. *The People,* 8 *Barb.,* 547.)

When an indictment charged a party with forging a check on a bank, with intent to defraud, &c., setting forth the check in *hæc verba,* it was held not necessary to allege that the check was an instrument in writing. (*People* v. *Rynders,* 12 *Wend.,* 427.)

Where the word " lottery " was used in an indictment, it was held that that word meant the same as the words " game " or " device," and that it was unnecessary to use the latter words. (*People* v. *Warner,* 4 *Barb.,* 314.)

The principle running through the cases cited on the subject of this indictment, and all the adjudications, is that, if all that is charged, *according to the settled rules of criminal pleading,* may be true, and yet the prisoner be guilty of no offence, or, at all events, not guilty of the offence sought to be charged, the indictment is fatally defective, and the judgment should be arrested.    All the authorities regard such defects not as matter of form, but as matter of *substance* which "tends to the prejudice of the defendant."

"The charge must contain a *certain* description of the crime of which the defendant is accused." (1 *Chitty's Cr. Law,* 169.)

VII. The learned judge at the Oyer and Terminer erred in denying the motion in arrest of judgment.

In his opinion he says, "the mistake is evidently a clerical one, but still *if material to charging the offence, would be available.*"

It clearly is material in charging the offence.    The substance of the charge now sought to be made in the indictment, is that defendant *with* a knife stabbed John Leary, and in that way killed him, and therefore is guilty of murder.    The third averment, charging that the "knife"    *    "did cut, thrust, stab," &c., is the only averment whose office should be to charge that defendant gave the blows which caused death.    The giving of the blows *with* "a certain knife," is the only criminal act that could be imputed to defendant; if the indictment were properly framed.    With the exception of the first averment, that defendant made an assault which, in an indictment for murder, would be unimportant unless accompanied by a blow or battery, and with the exception of the second averment, that defendant held a knife in his right hand, all that is alleged is simply a matter of *inference, conclusion or deduction,* from the premises previously stated.

The fourth averment of the giving of a mortal wound, and the fifth averment that death was the result of that wound, are certainly but deductions from the previous averment, as much so as if the fourth and fifth averments had used the language, "in manner and form aforesaid."

Shay *v.* The People.

The learned judge says: "The indictment would read so as to charge the offence, if 'these were included in a parenthesis—That the said Mortimer Shay (he, the said Shay, then holding a knife in his hand), did stab, beat, strike and wound the said Leary, and giving unto the said Leary, then and there with the knife aforesaid, a mortal wound," &c.

It is a sufficient answer to say that such is not the language of the indictment. It must be held sufficient or insufficient as it is. No court has the power to leave out certain words and insert others, or to rearrange or transpose the language, in order to cover up its legal deformity. As was said by the Supreme Court in *State* v. *Leach* (27 *Vt. R.*, 317), where a *single word*, as here, was left out in the indictment (after speaking of the omission of word), "though no doubt a mistake," the court say, "but can this omission be supplied or cured by intendment? We think not." "*No latitude of intention is allowed to include anything more than what is expressed.*"

Neither the whole of the third averment, nor any part of it, can be stricken out as surplusage.

In the case where it was asked to have stricken out as surplusage "or about," the indictment having averred that the offence was committed "on or about" a certain day, the court held that these words could not be stricken out as surplusage, inasmuch as so doing would alter entirely the legal effect of the averment in question. The court observe, "*if they were stricken out, the complaint would allege an exact day.*" (*State* v. *Barker*, 34 *Maine*, 52.)

It is said that "if, however, an averment may be entirely omitted, without affecting the charge against the prisoner, and without detriment to the indictment, it may be disregarded in evidence." (*State* v. *Copp*, 15 *N. H.*, 212.)

If the whole of the third averment was stricken out as surplusage, for the purpose of making sense of the rest of the indictment, there would be no allegation that the defendant (or even the knife, which is the subject of the indictment), struck any blows, or did any act to cause the death of Leary. *If the averment remain as it is, it fails to charge any offence against*

*the defendant; if it be stricken out as surplusage, the whole indict-ment is gone.*

The learned judge continues:

"The offence is fully stated without the word omitted." How? In what averment? Certainly not in the third aver-ment, which alleges the blow, the only act which could be criminal on the part of the defendant. It is, however, but just to quote the whole of this part of the opinion: "The offence is fully stated without the word omitted; and although it is necessary to name the weapon with which the death was effected, the indictment sufficiently shows it, notwithstanding the omission of the word complained of. The cases cited by the prisoner's counsel are none of them applicable to this case. They relate to cases where the defect was in charging the of-fence; here it is merely in relation to the weapon with which the offence was committed, and in that respect the objection is remedied by the subsequent part of the count in the indict-ment, which charges expressly that the wound was given with the knife, and that of such wound the deceased died."

It is submitted:

1st. That there is no difference, either in law or common sense, between stating the offence and stating the means or weapon with which it was perpetrated. *The statement of an offence includes a statement of every fact legally essential to consti-tute that offence.* As well might it be said that the description of a paper forged, formed no part of the statement of the of-fence of forgery, or that the description of an article stolen, or that the asportation or carrying away of the thing stolen formed no part of the statement of the offence of larceny, as to say, that the description of the act of a party in cutting and stab-bing *with* a knife, is not a part, and a most material part, of the description of the offence in an indictment for murder. This is the most material part of the offence; in short, it is em-phatically *the offence itself.*

2d. The objection to the indictment is not that it does not appear that the knife caused the mortal wound, and that of such wound the deceased died. If the learned judge thought

that, because it appeared that the knife caused the wound, and the wound resulted in death, the objection made to the principal averment in the indictment was obviated, he, through the fault of counsel probably, entirely misapprehended the nature of the objection. If he intended to hold that the subsequent averments charged that the prisoner struck the blows with a knife, then such a doctrine is diametrically opposed to the well settled rule of criminal pleadings, and the uniform current of adjudged cases.

Thus, in the indictment against the thief and receiver, jointly, which averred that the thief feloniously "did steal, take and carry" the goods, and that the second feloniously received the goods, knowing them "to have been feloniously stolen, taken and carried *away* as aforesaid," the omission of the word "*away*," was held fatal in arrest of judgment, not only with reference to the thief, but the receiver. It was held that, although the word *away was supplied in the subsequent averment, which alleged that the receiver, "well knowing it to have been stolen, taken and carried away," yet, inasmuch as this material word was left out in the averment which charged the stealing, that the judgment should be arrested with reference to the receiver as well as the thief.* (*Com.* v. *Adams,* 7 *Gray R.*, 43.)

In the indictment for subornation of perjury (before cited), where it was held that the omission of the single word "testified," was fatal on motion in arrest, the averment in question was in the following language: "And the said Charles Lee, being so sworn as aforesaid, then and there, at the trial of said issue, upon his oath aforesaid, falsely, corruptly and willfully, before the said jurors so sworn and taken, between the parties as aforesaid, and before the said court, in substance and to the effect following, that is to say: I [meaning the said Charles Lee] saw and conversed with Francis Geryette, in," &c. (*State* v. *Leach,* 27 *Vt,* 317.)

Here it will be perceived that although it appeared unmistakably from the whole averment what was intended to be charged, to wit, that the defendant testified thus and so, and although the testimony given on the proceeding in question,

was set out in detail in the subsequent part of the count, yet the court held that the word being material, it could not be supplied by intendment, nor could the difficulty be obviated by any of the subsequent averments, no matter how palpable might be the intention of the pleader.

In the case of *State* v. *Holden* (2 *McCord*, 377), before cited, where, on an indictment for passing counterfeit money, which averred that the defendant "feloniously utter, dispose and pass," omitting the word "did" before "utter," &c., it was contended that a subsequent averment cured the omission of the work "did." The court, however, held otherwise. In delivering their opinion, the court say: "Look into the indictment, and let it be asked with what criminal act does it charge the prisoner? It is answered in the argument, that by looking into the whole context, and taking into view the concluding averment, ' *that at the time of the uttering, &c., the prisoner well knew*,' &c., what was intended, sufficiently appears to answer all the purposes for which certainty is required. *The averment refers to the preceding, and you must look to that to determine its meaning*." [So in the case of Shay. If the third averment setting forth the fatal blows given to deceased, fails to allege that Shay gave those blows *with* "a certain knife"—and there is no pretence that he gave them in any other way—the expression in the subsequent part of the count, "giving unto the said John Leary, then and there, with the knife aforesaid," * * * "one mortal wound," does not cure the difficulty, because, in the language of the court cited, "*this averment refers to the preceding, and you must look to that to determine its meaning*."] The court in their opinion continue as follows: "Nothing ought, therefore, to be left to conjecture. It might be conjectured that the prisoner was present when another did the act," * * * "*and fancy might conjecture a thousand other things equally appropriate and innocent in themselves*." The court hold that the omission "is not supplied by the concluding averment in the indictment, and is fatal. The motion (in arrest of judgment) is granted."

Shay *v.* The People.

In all these cases, and in the authorities uniformly, it is held that a defective averment cannot be cured by a subsequent averment, where the foundation of the latter rests upon the former, and this no matter how apparent may be the meaning of the pleader, shutting out of view the rules of criminal pleading.

In the case of *State* v. *Thurston* (34 *Maine*, 205), before cited, the court say: "Although we can readily suppose what was intended by the averments, yet in criminal pleading nothing can be taken by intendment."

" *No latitude of intention is allowed to include anything more than what is expressed.*" Per Bennett, J., in delivering opinion of Supreme Court, in *State* v. *Leach* (27 *Vt.*, 317), before cited.

The charge must be sufficiently explicit to support itself, for no latitude of intention can be allowed to include anything more than is expressed. (1 *Chitty's Cr. Law*, 172.)

" A general averment that the accused had committed a particular crime named, without more specific allegations, would be insufficient." (*Per Howard, J.*, *State* v. *Thurston*, 35 *Maine*, 205.)

If an averment, descriptive merely, as for example, of the place of the offence, is material and fatal to the indictment. because in one part of it the word "shop," instead of "store," is used, then, certainly an averment describing the offence, or rather the prisoner's alleged participation in it, to wit, striking deadly blows *with* " a certain knife," is material, and the omission of the word *with*, in the most material part of the most material averment in the indictment, is fatal on motion in arrest of judgment. ·

It is clear that the indictment is fatally defective, and judgment should be arrested.

*Nelson J. Waterbury* (District Attorney), for the defendants in error.

I. The only offence of which this witness was claimed to have been convicted, was that of petit larceny, for which he

was sentenced to the House of Refuge. This being a first offence, was not a felony, and the sentence thereupon did not disqualify him as a witness. (*Carpenter* v. *Nixon*, 5 *Hill*, 260.)

1. The point whether or not petit larceny is yet a felony at common law, discussed in *Ward* v. *People* (3 *Hill*, 398), has no bearing upon this question, as is expressly ruled in *Carpenter* v. *Nixon*, above cited. Nor does the subsequent case of *The People* v. *Adler* (3 *Park. Cr. R.*, 254), controvert that ruling.

2. The statute (2 *R. S.*, 701, § 23, *orig. ed.*), bases the incompetency of a witness only upon a sentence upon a "conviction for felony," and further declares that "no sentence upon a conviction for any offence other than a felony shall disqualify;" and the same act (§ 30), declares that "the term felony, when used in this act or in any other statute, shall be construed to mean an offence for which the offender, on conviction, shall be liable by law to be punished by death, or by imprisonment in a State Prison." In no case can a person, convicted for the first time of petit larceny, be now sentenced to a State Prison.

II. The question was properly allowed. The defence sought to show by the witness that he discovered on the morning of the homicide that the prisoner's hat was cut, for the purpose of an inference that the cut had just been made by a weapon in the hand of the deceased; and it was clearly proper to show that the prisoner and a third person had fought with knives a few days previous, when the cut might have been made. The inference in one case would have been as warrantable as in the other.

III. On a cross-examination, the question was undoubtedly proper. The point as to the cut was material to the issue, and the question might be a foundation for impeaching the witness, to be followed by further questions, and then by showing that he had made a contradictory statement to another person.

IV. If the question was improper, the difficulty was cured by the answer. It elicited no testimony, and the rule is well settled that an exception will not be available to an improper question, when it does no harm.

V. The indictment clearly describes the offence, to wit, that of murder; and everything necessary to constitute it is positively stated. In no way can the indictment be read, so as to fail to describe the offence, and every essential thereto, or so as to leave any doubt in respect to either.

1. This is rendered more clear by omitting the clause concerning the knife, which it is claimed that the word "with" should precede; in which case the indictment would read, "and that the said M. S., him, the said J. L., in and upon the forehead, then and there willfully and feloniously, and of his malice aforethought, did beat, strike, stab, cut and wound, giving unto the said J. L., then and there, with the knife aforesaid, in and upon the forehead of him, the said J. L., one mortal wound," &c. So read, it will be seen that the only use or effect of the omitted words, "a certain knife which he, the said M. S., in his right hand then and there had and held," is to describe the knife, and the manner of holding it, and this may be considered as done by way of parenthesis.

VI. If the indictment sufficiently describes the offence, any deficiency in style or grammar, or any clerical error, is merely formal and is cured, especially after verdict, by the statute of jeofails. (2 *R. S.*, 728, § 52, *sub. 4, orig. ed.*)

*By the Court*, SUTHERLAND, P. J. At the last Oyer and Terminer, held in this city, the prisoner, Mortimer Shay, was tried on an indictment for the alleged murder of one John Leary, and was convicted.

The case comes before this court by writ of error.

On the trial, among other witnesses, one Stephen Leary was called and sworn as a witness on the part of the People, and the testimony which he gave was material to the issue.

It appearing that Stephen Leary had previously been convicted of petit larceny at a Court of General Sessions of the Peace, held in and for the city and county of New York, by a copy of the record of his conviction, properly certified and introduced in evidence by the counsel for the prisoner, the

counsel for the prisoner thereupon moved that the evidence of the said Stephen Leary be stricken out.

The court denied such motion, and refused to strike out such evidence; and the counsel for the prisoner then and there duly excepted to such refusal of the judge to strike out Stephen Leary's testimony.

The first question presented by the writ of error, is, did the judge err in refusing to strike out this testimony? or, in other words, was Stephen Leary a competent witness, notwithstanding his previous conviction of petit larceny?

The three chapters constituting the fourth part of the Revised Statutes, were passed as one act. That act is entitled "An act concerning crimes and punishments," &c.

By section one of title six of chapter one of that act (2 R. S., 690), petit larceny is defined to be the "stealing, taking or carrying away the personal property of another, of the value of twenty-five dollars or under;" and that section declares that the punishment of petit larceny shall be "imprisonment in a county jail not exceeding six months, or by fine not exceeding one hundred dollars, or by both such fine and imprisonment."

Section twenty-three of title seven of the same chapter (2 R. S., 701), declares that "no person sentenced upon a conviction for felony, shall be competent to testify in any cause, matter or proceeding, civil or criminal, unless pardoned," &c.; but that "no sentence, upon a conviction for any offence other than a felony, shall disqualify or render any person incompetent to be sworn or to testify in any cause, matter or proceeding, civil or criminal."

Section thirty of the same title, seven (2 R. S., 702), declares that "the term felony, when used in this act, or in any other statute, shall be construed to mean an offence for which the offender, on conviction, shall be liable by law to be punished by death or by imprisonment in a State Prison."

It would appear to follow so clearly and conclusively from these statutory provisions and definitions, that Stephen Leary was a competent witness in this case, notwithstanding his previous conviction of petit larceny, and that the judge did right

in refusing to strike out his evidence; that it is difficult to see how even a question could be raised on that point. One provision of the act is, that no conviction for any offence other than a *felony*, shall disqualify or render any person incompetent to be sworn or to testify; and another provision of the same act defines the word "*felony*," *when used in the act*, to be an offence punishable by death or imprisonment in a State Prison; and by a third provision of the same act, the offence of petit larceny is defined; and it is declared to be punishable, not by death or imprisonment in a State Prison, but by fine or imprisonment in a county jail, or by both such fine and imprisonment.

It follows so plainly from these statutory provisions that Stephen Leary was a competent witness, notwithstanding his previous conviction of petit larceny, that one would hardly look for, or expect to find, an authority outside the statute on that point.

The case of *The People* v. *Adler* (3 *Park. Cr. R.*, 249), does not at all interfere with this plain construction of the statute. That case decides only that the definition of the word felony, in the Revised Statutes, applies only where the word is used in a statute, leaving petit larceny still a felony as at common law, " in respect to all questions controlled solely by the common law." The question in *The People* v. *Adler* was such a question, unaffected by the statutory definition.

On the cross-examination, by the District Attorney, of Thaddeus Spencer, a witness called and sworn for the prisoner, the District Attorney put this question to the witness: Do you know that the prisoner had a cutting match with any one previous to the killing of Leary?

The witness was allowed to answer this question, after objection by the counsel for the prisoner. The answer was: I do not.

As the answer could not possibly prejudice the prisoner, it is unnecessary to inquire whether the question in reference to the testimony which had been given by the witness on his direct examination, was or was not proper.

The remaining question in this case is raised on the face of the indictment. That question is, whether the indictment, in charging the offence, sets forth with sufficient particularity and certainty the manner of the death, and the means by which it was effected? The counsel for the prisoner insists that the indictment is fatally defective in this respect, and does not charge the crime of murder within the rules of criminal pleading, and therefore moves that the judgment be arrested.

The indictment, after alleging in the usual manner that the prisoner, on a certain day, at the first ward in the city of New York, with force, &c., on and upon John Leary, willfully, feloniously, &c., did make an assault, and then proceeds as follows:

"And that the said Mortimer Shay,    a certain knife, which he, the said Mortimer Shay, in his right hand then and there had and held, him, the said John Leary, in and upon the forehead, then and there willfully and feloniously, and of his malice aforethought, did beat, strike, stab, cut and wound, giving unto the said John Leary, then and there, *with the knife aforesaid,* in and upon the forehead of him, the said John Leary, one mortal wound, of the breadth of one inch, and of the depth of three inches, of which mortal wound, he, the said John Leary," &c.

The counsel for the prisoner insists that the evidently clerical mistake in the omission of the word *with,* before the description of the weapon, renders the indictment fatally defective; that although the indictment alleges that the fatal wound was given with the knife, yet that in consequence of the omission of the word *with* before the word *knife,* in the preceding portion of the indictment, it is not alleged that the fatal *blow* or *stab,* &c., which caused the mortal wound, was given with the knife; that it does not appear, nor is it alleged, that the knife caused the mortal wound.

Now, without examining the authorities cited by the counsel for the prisoner, to show the particularity required in an indictment for murder, in setting forth the manner of the death and the means by which it was effected, and conceding for the purposes of this question, that the indictment in this case

Shay *v.* The People.

should have substantially alleged that the mortal blow or stab was struck or made with the knife, yet I think this indictment does in fact so substantially allege. The indictment distinctly and certainly alleges three things: 1st. That the prisoner then and there had and held in his right hand a certain knife. 2d. That he did then and there beat, strike, stab, cut and wound the deceased. 3d. That he then and there gave unto the deceased, on and upon his forehead, with the knife aforesaid, one mortal wound, &c.

Now is not this substantially alleging that the blow, stab, &c., were given *with* the knife?

It is certainly plainly alleged that the prisoner struck the deceased, having in his right hand a knife, and that he gave the mortal wound with the knife. Is not this substantially alleging that the prisoner struck the deceased with the knife, and that the knife caused the mortal wound? I think it is, and that the death, and the means, and the manner in and by which it was effected by the prisoner, are sufficiently and certainly charged in the indictment.

In my opinion the judgment of the Oyer and Terminer should be affirmed.

Judgment affirmed.(*a*)

---

(*a*) The following opinion was given by Judge Ingraham, on a motion in arrest of judgment in this case, made on the ground of the clerical omission in the indictment:

INGRAHAM, J. In this case the prisoner has been tried and convicted of mur-.der. No objection was taken on the trial, or previous thereto, to the form of the indictment. A motion is now made on behalf of the prisoner in arrest of judgment for the omission of the word "with" in the indictment, before the description of the weapon used by the prisoner. The mistake is evidently a clerical one; but still, if material to charging the offence, would be available. The clause in the indictment reads as follows: "That the said Mortimer Shay, —— a certain knife which he, the said Mortimer Shay, in his right hand then and there had and held, him, the said John Leary, in and upon the forehead, then and there willfully and feloniously, and of his malice aforethought, did beat, strike, stab, cut and wound, giving unto the said John Leary, then and there, with the knife

SUPREME COURT.   New York General Term, March, 1858.   *Davies,*
            *Clerke* and *Sutherland,* Justices.


---

aforesaid, in and upon the forehead of the said John Leary, one mortal wound,"
&c.   I cannot conclude that the omission of the word "with," before the words
"a certain knife," is such a defect in substance as to warrant granting this motion.
The indictment would read so as to charge the offence, if those words were in-
cluded in a parenthesis—"That the said Mortimer Shay (he the said Shay then
holding a knife in his hand), did stab, beat, strike and wound the said Leary,
and giving unto the said Leary, then and there with the knife aforesaid, a mortal
wound," &c.   The offence is fully stated without the word omitted; and although
it is necessary to name the weapon with which the death was effected, the
indictment sufficiently shows it, notwithstanding the omission of the word com-
plained of.   The cases cited by the prisoner's counsel are none of them applicable
to this case.   They relate to cases where the defect was in charging the offence;
here it is merely in relation to the weapon with which the offence was committed,
and in that respect the objection is remedied by the subsequent part of the count
in the indictment, which charges expressly that the wound was given with the
knife, and that of such wound the deceased died.   It seems to me that the offence
is fully charged in the indictment, notwithstanding the omission of this word, and
if so, it becomes a mere error in matters of form, which is cured by the statute.

                                        Motion denied.