THE PEOPLE, *ex rel.* Henry Stetzer, *vs.* GEORGE W. RAWSON, Special County Judge of Monroe County.

On the return to a writ of *habeas corpus*, it is well settled that the party imprisoned may inquire into the jurisdiction of the tribunal by which he was committed; and if he is able to show that such tribunal had no jurisdiction to try, convict or commit, he is entitled to his discharge.

A person convicted, in this State, of the crime of petit larceny, as a first offense, is not convicted of a felony, but of some offense other than a felony.

It was the intention of the legislature, in enacting the provisions of the Revised Statutes, to reduce the offense of petit larceny, as a first offense, to the grade of a misdemeanor. And practically, for all the general purposes of the prevention and punishment of crime, the offense has been deprived of its rank amongst felonies, and reduced to the lower grade, of misdemeanors.

If the statute has not had the effect to change the name of the offense, it has changed its character; and by whatever name it may strictly be called, it is an offense of the grade of misdemeanor, only, within the spirit and meaning of section 26 of article 6 of the constitution, giving to courts of special sessions jurisdiction of offenses of the grade of misdemeanors, as may be prescribed by law.

An act of the legislature giving to courts of special sessions in a specified county exclusive power to hear, try and determine, amongst other offenses, "all cases of petit larceny not charged as a second offense," arising within the county, is constitutional and valid; and a trial and conviction of an individual, before a court of special sessions, within said county, for the offense of petit larceny as a first offense, is by a court of competent authority.

The court of special sessions having exclusive jurisdiction of the offense, is bound to try it; and has no right to take bail, when offered.

A warrant of commitment, in a criminal case, directed to a proper officer, commanding him to convey and deliver the prisoner to the "keeper" of the prison where he is to be imprisoned, and requiring the keeper to safely keep the prisoner until the expiration of a specified period, and until he shall pay a fine therein mentioned, or be discharged by due course of law, is in all respects in the proper form.

Even if the conclusion of such a warrant is held to be irregular, or incongruous, the warrant will still be lawful, and will not entitle the prisoner to his discharge, on *habeas corpus.*

It is no objection to a warrant of commitment upon a conviction before a court of special sessions, that it is not issued immediately. So long as the case remains before the court, not removed in any manner, such court does not lose jurisdiction to issue the warrant, by lapse of time.

No seal is necessary, to a warrant of commitment. The statute only provides that it shall be "under the hand" of the magistrate.

ON the 18th day of January, 1871, the relator was brought before the respondent by Alexander McWhorter, on a writ of *habeas corpus* issued by the respondent, and directed to said McWhorter. McWhorter made a return to the writ, that he was superintendent of Monroe county penitentiary, and that he held the relator in costody by virtue of a warrant of commitment issued by Alpheus S. Clark, a justice of the peace of the town of Penfield, which warrant was attached to his return. The warrant of commitment was directed to the "keeper" of the penitentiary; and in the body of it are these words: "And you the said keeper, are hereby commanded to receive the said Henry Stetzer, and him there safely keep." The return did not show who was the "keeper," and there was no pretense that McWhorter was other than superintendent. The warrant is dated January 18, 1871, and recites a judgment against Stetzer, in a court of special sessions, on a conviction of petit larceny, in these words: "And whereas, upon such conviction, the said court did adjudge and determine that said Henry Stetzer should be imprisoned in the Monroe county penitentiary for the term of six months, and to pay a fine of fifty dollars, *and stand committed until said fine be paid.*" The words above italicized are not in the record of conviction, and no judgment was pronounced, directing the imprisonment of the relator for non-payment of the fine; the adjudication and determination set forth in such record being, "that the said Henry Stetzer be imprisoned in the Monroe county penitentiary for the period of six months, and in addition thereto to pay a fine of fifty dollars." The warrant of commitment concludes by requiring the keeper to imprison said Stetzer, in addition to the six months, "until he shall pay the said fine." Stetzer made answer to the return of McWhorter. On the issue thus joined, evidence was taken before the respondent. The respondent remanded the relator, who brought the proceedings into this court by *certiorari.*

The People *v.* Rawson.

*John Van Voorhies*, for the relator.

I. McWhorter is not "keeper" of the penitentiary. He is superintendent. There is no such man as keeper. Or if there is, he has not got the man. The warrant of commitment is, therefore, void as to McWhorter, and no protection to him, because it is not directed to him personally, nor as superintendent. The warrant must be executed by the person to whom it is directed, and cannot be by another person. (1 *Chitty's Crim. Law,* 45.) "A warrant of commitment, issued by a justice of the peace upon a conviction of petit larceny, is void, unless it be directed to the officer to whom it is to be executed." (*Russell v. Hubbard,* 6 *Barb.* 654.) A criminal warrant cannot be executed by a private person. This warrant is not directed to McWhorter, nor is it directed to the superintendent of the penitentiary. It not being directed to him personally, nor to him as an officer, he gets no authority from it.

The reasoning of judge Allen, and the cases cited by him in *Russell v. Hubbard,* are conclusive on that point. See also the case of *The People v. Holcomb,* (3 *Park. Cr. R.* 656.) In this case the warrant was directed to any constable of the county. It should have been to a constable of the town. It was held bad. It will not do to direct a warrant to the wrong officer, even if it is given to the right one.

II. The warrant of commitment is fatally defective, in that it directs the imprisonment of the relator, in addition to the six months specified in the judgment, for an indefinite time thereafter, not mentioned in the judgment. In other words, six months' imprisonment is all the judgment calls for. The warrant calls for more; it may be years more. The only way to collect the fine is by execution. The statute provides how. (2 *R. S.* 506, § 22, *Edm. ed.*) Here, there was no order for the commitment of the relator until the fine be paid, except the warrant itself. This statute applies to all courts. See section 33,

which shows that it applies to mayors' courts, and section 42, which shows that it applies to courts of special sessions. (1 *Cowen*, 144.)

III. The mittimus is not under seal. *Russell* v. *Hubbard*, (6 *Barb*. 654,) decides that the statute does not prescribe, and was not intended to prescribe the form of the warrant in such cases. That the warrant must be sufficient at common law. At common law, a warrant is void without a seal. (*The People* v. *Holden*, 3 *Park*. 656. *Beekman* v. *Traver*, 20 *Wend*. 67.)

IV. The voluntary discharge, by the justice, of the relator, after his conviction and sentence, is conclusive. He could not be arrested afterwards. It was not an escape, but a discharge from imprisonment by the court. This is not the case of an escape from an officer, and a recapture. It is a discharge, and, after three weeks, an arrest on a mittimus. Courts of special sessions have no power to suspend, at pleasure, the execution of judgments rendered by them. No court has such power, except in cases provided for by law. Here is no such provision. (1 *Colby's Crim. Law*, 209.) If a prisoner, after conviction, gives the proper notice that he shall apply for a certiorari, and executes a proper recognizance, that suspends the execution of the sentence, until his time to procure a certiorari expires. If he allows the time to expire and fails to get a writ, then the justice can issue his commitment and execute the sentence. (*The People* v. *Yates*, 5 *Wend*. 110.) The justice could not, in that case, proceed while the execution of the judgment was suspended. Here, there has been no suspension, except an illegal one by the justice. He might have issued his mittimus the day of the conviction, and the recognizance which was given was not at all in his way. He artfully waits twenty-one days, and then his warrant issues. The recognizance was not filed in the clerk's office by the justice, as it is required to be on certiorari. (1 *Colby's Crim. Law*, p. 530.)

The People *v.* Rawson.

V. The dating the mittimus twenty-one days after the conviction, there having been in the meantime no suspension of judgment, is illegal, and makes the warrant void. If the justice can suspend twenty-one days, he can twenty-one years. The fact is, he has no discretion in the matter. He should issue his mittimus at once, or if not, at any rate the prisoner must be deemed to begin his term at once. Suppose he had waited six months, and then issued his warrant. Without doubt it would be void.

VI. The prisoner had a right to give bail to the court of sessions. The justice lost jurisdiction when he refused to take bail. The offense is a felony at common law. The relator had a right to a common law jury of twelve men. (*Wynehamer* v. *The People*, 13 *N. Y.* 378, 426, 458, 459, 487.) This is admitted to be so before the amendment of the constitution in 1869. Section 26 of the judiciary article of the new constitution is as follows: " Courts of special sessions shall have such jurisdiction of offenses of the grade of misdemeanors, as may be prescribed by law." Petit larceny is not of the grade of misdemeanor, and therefore, the act of 1870, (*Sess. Laws of* 1870, *ch.* 47,) is unconstitutional, so far as it relates to that offense. The Revised Statutes have not changed the grade of petit larceny. *Colby*, in his Criminal Law, (*vol.* 2, *p.* 89,) says : "Petit larceny at common law was a felony, and although the legislature may have supposed that they had reduced it to the grade of a misdemeanor, still it has been held that the provision of the statute defining what should constitute a felony, within the statute, did not reach those at common law, which were not included in the provision ; and that the common law rule that petit larceny is a felony, has not been changed by the Revised Statutes," and he cites *People* v. *Adler*, (3 *Parker*, 249;) *Carpenter* v. *Nixon*, (5 *Hill*, 260;) *Ward* v. *People*, (3 *id.* 396 ;) *Keyser* v. *Harbeck*, (3 *Duer*, 386.) *See also*, 1 *Colby's Crim. Law*, 483. 2 *id.* 89.

*J. M. Davy,* (district attorney,) for the respondent.

I. The special county judge was correct in remanding Stetzer to prison.

II. On the return of the writ of habeas corpus, the judge could only examine the warrant of commitment, to see if it was regular on its face, and whether it was issued by a court having criminal jurisdiction. (2 *R. S.* 562, § 22. *Id.* 567, § 40. 4 *Barb.* 32. 1 *id.* 340. 3 *Parker,* 562. 4 *id.* 9.)

III. The warrant of commitment is regular upon its face, and is valid even without a seal. (5 *Parker,* 651. 4 *Barb.* 22.) The Revised Statutes, (*p.* 444, § 158, *5th ed.*) provide that all process issued by any justice of the peace, shall be signed by him, and may be under seal or without seal. In many standard works on forms, the warrants are without seals. (*N. Y. Civil and Crim. Justice, p.* 648. *Benedict's Treatise on Justices' Courts, p.* 420. *New Clerk's Assistant, p.* 360.)

IV. The warrant shows that Stetzer was committed by the justice of the peace who was holding a court of special sessions.

V. The court of special sessions is a court which has criminal jurisdiction, to try and pass judgment in cases of petit larceny. (2 *R. S. p.* 224. 1 *Colby's Crim. Law,* 31. 2 *Cowen,* 815. 1 *id.* 151.) Under the act of 1870, (*ch.* 47,) courts of special sessions in the county of Monroe, have exclusive jurisdiction to hear, try and determine all cases of petit larceny, not charged as a second offense.

VI. Under the new constitution, section 26, " courts of special sessions have jurisdiction of offenses of the grade of misdemeanor, as may be prescribed by law." (2 *Seld.* 50.) Petit larceny is a misdemeanor, as it is not a State prison offense. (2 *Colby,* 89·) By the Revised Statutes of this State, the term "felony," when used in any statute, shall be construed to mean an offense for which the offender, on conviction, shall be liable by law to be punished

The People *v.* Rawson.

with death, or by imprisonment in a State prison. (2 *R. S.* 702, § 40. 1 *Colby,* 481. 1 *Park.* 45. 2 *Seld.* 45, 50.)

VII. The prisoner gave bail before the justice for his appearance at the next court of sessions, to enable him to sue out a writ of certiorari, that being the only mode of proceeding to bring the case properly before said court. (2 *R. S.* 903, § 50, *4th ed.* 1 *Colby's Crim. Law,* 228.)

VIII. The prisoner Stetzer neglected to sue out a writ of certiorari, and to serve the same on the justice within the time prescribed by law, failing to comply with the requirements of the statute in that respect. The justice caused the judgment of the court to be executed, which was legal and proper. (1 *Colby's Crim. Law,* 228, 230. 5 *Wend.* 110.)

*By the Court,* JOHNSON, J. The question presented by this *certiorari* and the return thereto is, whether the special county judge should have discharged the relator when brought before him on the writ of *habeas corpus.* On the return to such a writ, it is well settled that the party imprisoned may inquire into the jurisdiction of the tribunal by which he was committed, and if he is able to show that such tribunal had no jurisdiction to try, convict, or commit, he is entitled to his discharge. (*The People* v. *Cassels,* 5 *Hill,* 164. *The People* v. *McLeod,* 1 *id.* 377. *Matter of Divine,* 21 *How. Pr.* 80. *People* v. *Riley, Id.* 451. *People* v. *Willett,* 15 *id.* 210. *The People* v. *Mitchell,* 29 *Barb.* 642. *People* v. *Kelly,* 35 *id.* 444. 2 *R. S.* 563, § 22, *sub.* 2. *Id.* 567, § 39.)

The principle ground relied upon in behalf of the relator is, that the court of special sessions, by which he was tried, convicted and committed, had no jurisdiction to try the offense, and to convict and commit upon the facts shown before the special county judge, in the proceedings upon the *habeas corpus.* It there appeared that the relator was regularly brought before the magistrate, by whom he

was afterwards tried and convicted, on a warrant issued upon a complaint against him for the crime of petit larceny as a first offense. The relator thereupon offered to give bail for his appearance at the next court of sessions, in Monroe county, which the justice refused to take. He then objected to the right of the justice to try him for the offense, after his offer to give bail. The justice overruled the objection, and proceeded to try the relator, as a court of special sessions. He was convicted of the offense charged, and sentenced and imprisoned by virtue of a warrant of commitment issued by the justice.

By the Revised Statutes, jurisdiction is given to courts of special sessions to try persons charged with the crime of petit larceny as a first offense, provisionally, and is limited to cases where, 1. The person charged with such offense shall request to be tried by such court; and, 2. Where such person, not making such request, shall omit for twenty-four hours after being requested by the magistrate before whom he is brought, to give bail for his appearance at the next criminal court having jurisdiction. (2 *R. S.* 711, §§ 2, 3.) If the person so arrested and brought before the magistrate offered to give bail for his appearance at the next criminal court having jurisdiction, it was the duty of the magistrate to take bail, and he had no jurisdiction to proceed and try the case as a court of special sessions. (*The People* v. *Berberrich*, 20 *Barb.* 224.)

The magistrate, in the case before us, held that it was his right and duty to refuse bail, and to try the relator under the provisions of the act of 1870. (*Sess. Laws of 1870, ch.* 47.) This statute, in terms, gives to courts of special sessions in the county of Monroe exclusive power to hear, try, and determine, amongst other offenses, "all cases of petit larceny, not charged as a second offense," arising within that county. As the case comes directly within that statute, the magistrate had jurisdiction, and

the relator was properly held to trial if the statute is valid and effectual to confer the power.

It is contended, on behalf of the relator, that this statute is unconstitutional and void, 1. Because it deprives a party of the right of trial by a common law jury of twelve men, contrary to the provisions of section. 2, article 1, of the constitution; and 2. Because the crime of petit larceny is not an offense of the grade of misdemeanor, and to this extent, the statute goes beyond the limitation of section 26, of article 6, of the constitution.

· It must be admitted that independent of this section 26, in the new judiciary article of the constitution, this statute, so far as it attempts to confer unqualified and exclusive jurisdiction upon courts of special sessions, could not be upheld within the principle of the decision of the Court of Appeals in the case of *The People* v. *Toynbee,* (13 *N. Y.* 378.) The offense in that case, it is true, belonged to a class of which courts of special sessions had no jurisdiction whatever, at the adoption of the constitution of 1846; and the decision, upon this point of the case, turned mainly upon that ground. But the reasoning of the judges on the question, and the principle which obviously controlled, went much further, and to a length which would reach all cases in which courts of special sessions had only a qualified jurisdiction to try and convict, at the adoption of the constitution.

The point established was, that by section 2, of article 1, of the constitution, the right of trial by a common law jury of twelve men was guarantied to every person, as it stood when the constitution was adopted; and that this section was a limitation upon the power of the legislature, which could not be overstepped so far as to confer upon courts of special sessions unqualified and exclusive jurisdiction, to try and convict for any offense of which, at the adoption of the constitution, they had only a qualified, or conditional jurisdiction, for the reason that

the effect would necessarily be to deprive a party of the right to be tried by a common law jury, who might desire to be so tried. And it was distinctly asserted that this limitation was not so qualified by section 6 of the same article as to justify this exercise of power on the part of the legislature. Section 6, it will be borne in mind, provides that no person shall be held to answer for a capital, or other infamous offense, unless on presentment, or indictment of a grand jury. The offense in that case, out of which the question arose, was not a capital or infamous crime, but a mere misdemeanor. It can scarcely be conceived that the decision in the case referred to, would have been the same on that point, had section 26 of the present judiciary article been then in the constitution. This section ordains, expressly, that " courts of special sessions shall have such jurisdiction of offenses of the grade of misdemeanors as may be prescribed by law." This provision must be held to operate as an amendment to the constitution of 1846, as it stood when the decision was made in *The People* v. *Toynbee*, (*supra ;*) and it must have been so designed, by the electors who adopted the new judiciary article of the proposed constitution, and rejected the residue. The provision was doubtless designed to remedy a defect in our criminal jurisprudence, which that decision had shown, in reference to the trial and punishment of offenses against the law, of the grade of misdemeanors. Of course it was not proposed by the convention, nor adopted by the electors, as a mere idle form of words. It was designed to effect some change, and to accomplish some definite object and purpose. This object is, I think, very plain. It was to enable the legislature, in its discretion, to confer upon these inferior courts just that unqualified and exclusive jurisdiction in the lower grade of offenses which it was held not to possess, by the decision before referred to. And it must, I think, have the effect to modify and qualify the limitation upon legislative power

The People *v.* Rawson.

which was held to be imposed by section 2 of article 1, in respect to offenses of the grade specified. Courts of special sessions were well known courts of criminal jurisdiction, authorized to have a jury of six men, as a component part of the tribunal, whenever a person to be tried before it demands to be tried by a jury. This jury was first added as a part of this court as far back as 1824, and has been ever since continued.

Shortly after the decision before mentioned, and in 1857, the qualified jurisdiction of these courts was greatly enlarged, by adding thereby to the number of offenses which they were authorized to try, by the Revised Statutes, and among others, offenses arising under the excise laws. (*Sess. Laws of* 1857, *ch.* 769.)

It had been decided, under the constitution of 1821, which contained a provision identical with the one in our present constitution, on the subject of trials by jury, by the late court for the correction of errors, that the statute authorizing the conviction of disorderly persons, by magistrates, without any jury, was constitutional. (*Duffy* v. *The People*, 6 *Hill*, 75.) The reasoning of the chancellor in the last case tends very strongly to a conclusion adverse to that arrived at in *The People* v. *Toynbee*, as will be seen by reference to his opinion, and seems to countenance the idea that even in cases of petit larceny, the legislature would have been warranted in authorizing a trial by special sessions without any jury. This is referred to only for the purpose of showing how the law stood, as pronounced by these decisions, in reference to the power of the legislature to confer jurisdiction upon courts of special sessions, before the adoption of the new judiciary article as an amendment of our present constitution, and to render more clear and apparent the design of section 26.

The question had been, what power these courts might or could have, under the provisions and limitations of the constitution, as it had before stood. That question had

been determined to the effect that a restricted or qualified jurisdiction, only, could be conferred by the legislature. This section comes in and clearly removes that difficulty, by declaring that these courts shall have such jurisdiction, in certain cases, as the legislature may see fit to confer. The object clearly was to remove the limitation to the extent indicated. If that was the design, the adoption of the section must be held to have produced the effect. This leaves the legislature at liberty to confer such power upon these tribunals, either conditional or absolute, in regard to the class of offenses specified, as it may deem most compatible with the public welfare.

The question still remains, however, whether the crime of petit larceny, charged as a first offense, of which the relator was convicted under the statute in question, falls within the class of offenses mentioned in section 26 of the constitution. By the terms of the section, as has been seen, the power which may be conferred upon these courts is limited to "offenses of the grade of misdemeanors." By the Revised Statutes, the terms "crime" and "offense," are defined to be any offense for which any criminal punishment may by law be inflcted. And the term "infamous crime" is to be construed as including every offense punishable with death or by imprisonment in a State prison, and no other. (2 *R. S.* 702, §§ 31, 23.) By the constitution, (art. 1, § 6,) petit larceny is expressly excepted from the class of infamous crimes, which were not to be answered for, except upon presentment or indictment of a grand jury.

The legislature, by the statute in question, has undertaken to place the crime of petit larceny, when charged as a first offense, as of the grade of a misdemeanor, only. Does it belong to that grade of offenses, or had the legislature the power to declare it an offense of that grade, and place it in that category? The section of the constitution referred to, it is seen, does not name any particular crime

The People *v.* Rawson.

or offense, but includes all of a certain grade. It is the grade of the offense, and not the name, to which the provision of the constitution refers.

Grade, as defined by lexicographers, is a degree, or rank, in order or dignity—a step or degree in any ascending series. Grades of crime, in legal parlance, are always spoken of and understood as higher or lower in grade, or degree, according to the measure of punishment attached and meted out on conviction, and the consequences resulting to the party convicted. Punishments are attached by law to offenses, according to what is deemed to be their heinousness, and their injurious consequences upon society. In this way they are ranked or graded, and by this rule the rank or grade of a crime, or of a class of crimes, as of a higher or lower grade, is determined. These grades are frequently changed, in the progress of society, by legislative enactment, as the particular offense to which the penalty is attached comes to be regarded as more or less injurious in its consequences. Thus, at common law, petit larceny, which consisted in stealing the goods of another of the value of twelve pence or under, was held to be of the rank or grade of a felony, because a conviction of it involved and occasioned a total forfeiture of the lands or goods, or both, of the person so convicted. This was the test, whether a crime held the rank of a felony, or belonged to the lower grade of misdemeanor. (4 *Black. Com.* 94, 95, 229. Perjury, at common law, was ranked as a misdemeanor only, because it was punished only by fine and imprisonment, and did not occasion, upon conviction, the forfeiture of either lands or goods. (4 *Black. Com.* 5, *n.* 5. *Id.* 138. *Arch. Cr. Pl.* 427.) These grades are now entirely reversed by our statutes.

The relator's counsel contends that neither our constitution or statutes have effected any change in the grade of the offense of petit larceny, and that it still remains a felony in all respects, as at common law ; and he cites *Ward*

The People *v.* Rawson.

v. *The People*, (3 *Hill*, 396;) *Carpenter* v. *Nixon*, (5 *id.* 260;) and *The People* v. *Adler*, (3 *Park. Cr. R.* 249,) to sustain his position.

It becomes necessary to examine these cases, and some others which have not been cited, to see precisely what has been decided on this question. In the first case, that of *Ward* v. *The People*, the plaintiff in error had been convicted of petit larceny as a second offense. He had been previously convicted of stealing ice, from an ice-house, and the question in the case was whether ice in that condition was the subject of larceny. In delivering the opinion of the court, Nelson, Ch. J., expressed the opinion that the legislature had not, by the Revised Statutes, accomplished what they doubtless intended, in changing petit larceny from a felony to a misdemeanor. But the question did not arise in the case, and the point was not in judgment. It was *obiter*, merely. The learned chief justice admits that that was what the legislature intended to do, and also that the question was wholly immaterial in the case. The next case, that of *Carpenter* v. *Nixon*, presented the question, only, whether a person who had been convicted of petit larceny as a first offense, was competent to testify as a witness, in an action, and the same court held that he was competent, and that he had not been convicted of a felony, within the meaning of the statute. In the third case cited, *The People* v. *Adler*, the defendant, a private person, was indicted for an assault and battery, in making an arrest, without a warrant, of a person who had, several days before, committed the crime of petit larceny, and detaining him until an officer could be sent for to take him in charge and take him before a magistrate; and it was held that the arrest was lawful. This was placed upon the ground that, at common law, any person might lawfully make an arrest for a felony, without warrant, and that petit larceny was still a felony, and had not been reduced to the offense of a misdemeanor

The People *v.* Rawson.

by the Revised Statutes, but still remained a felony "in respect to all questions controlled solely by the common law." The cases cited by the court to sustain this position are those of *Ward* v. *The People*, and *Carpenter* v. *Nixon*, (*supra*,) in neither of which, as we have seen, was the question decided. The only point decided in *Carpenter* v. *Nixon* was that a person who was convicted of the offense of petit larceny for the first time, had not been convicted of a felony. The same question came again before this court, at general term in the first district, in the case of *The People* v. *Shay*, (18 *How. Pr.* 538.) The question there was, whether a person convicted of petit larceny as a first offense, had been convicted of a felony; and it was held that he had not, and that petit larceny was not a felony, under our statutes. In that case the court says that all that was decided in *The People* v. *Adler*, was, that petit larceny was still a felony, "in respect to all questions controlled *solely* by the common law." This case was carried to the Court of Appeals, (22 *N. Y.* 317,) and it was there expressly held that a conviction for petit larceny as a first offense was not a conviction of a felony, under our law.

The question presented was, whether a person so convicted was competent as a witness, and the counsel for the plaintiff in error cited, and relied upon, the cases of *Ward* v. *The People*, *The People* v. *Adler*, (*supra*,) and *Keyser* v. *Harbeck*, (3 *Duer*, 373.)

The court, in deciding the case, refer to the statute (2 *R. S.* 701, § 23,) which declares that "no person sentenced upon a conviction for a felony shall be competent to testify in any cause," &c., "but no sentence upon a conviction for any offense other than a felony, shall disqualify or render any person incompetent to be sworn, or to testify in any cause, matter or proceeding, civil or criminal," and held that the conviction and sentence were under the latter clause.

Thus it appears to be conclusively established, that a person convicted in this State, of the crime of petit larceny as a first offense, is not convicted of a felony, but of some offense other than a felony.

There is but one case in this court, that of *People* v. *Adler,* which decides that petit larceny is still a felony, as at common law; and that case only holds it to be so, where the case is controlled wholly by the common law, and in no respect by the statute. All the cases agree that the legislature, without doubt, intended to reduce the offense to the grade of a misdemeanor, and supposed it had done so. There can be no question that such was the intention of the legislature in the enactment of the provisions of the Revised Statutes. Petit larceny as a second offense is expressly declared to be a felony and made punishable as such. But from the first offense, all the consequences which ever attached to the crime of felony are taken away. Courts of special sessions have jurisdiction over it, precisely as over other misdemeanors, and it is triable and punishable in all respects as a misdemeanor, and as a misdemeanor only. If it can still be regarded as a felony at all, in this State, since the Revised Statutes, (which the examination of this case has led me very much to doubt,) it can be so only nominally, or under some special circumstances. Practically, for all the general purposes of the prevention and punishment of crime, it has been deprived of its rank among felonies, and reduced to the lower grade of misdemeanors. If the measure of punishment, and the consequences attached to a conviction and sentence, have anything to do in determining the rank or grade of a crime, most clearly petit larceny as a first offense, is but a misdemeanor.

My conclusion therefore is, that if the statute has not had the effect to change the name of the offense, it has changed its character, and that by whatever name it may strictly be called, it is quite safe to hold that it is an

The People *v.* Rawson.

offense of the grade of misdemeanor only, within the spirit and meaning of section 26 of article 6 of the constitution. This being so, there can be no doubt that the act in question is constitutional, and that the trial and conviction were by a court of competent authority. The magistrate, having exclusive jurisdiction of the offense, was bound to try it, and had no right to take the bail offered.

The question of jurisdiction in the magistrate being settled, the only other question which can be examined, in regard to the proceedings upon the habeas corpus, is, whether the warrant of commitment was in due form. (*People* v. *McCormack*, 4 *Park.* 9.) The relator, upon being convicted, was sentenced to six months imprisonment, in the Monroe county penitentiary, and in addition thereto, to pay a fine of $50. The statute, (2 *R. S.* 716, § 31,) provides, that the judgment of every court of special sessions shall be executed by certain officers therein specified " by virtue of a warrant under the hand of the magistrate who held the court," " to be directed to such officers, specifying the particulars of such judgment." The form is not otherwise prescribed. The commitment in this case was, in all respects, in the proper form. It was directed to a proper officer, to convey and deliver the prisoner, and to the " keeper" of the prison where he was to be imprisoned. It directed the keeper to safely keep the prisoner until the expiration of the term of six months, and until he should pay the fine, or be discharged by due course of law. This was clearly a proper conclusion of the warrant. But even if the conclusion were to be held irregular, or incongruous, the warrant would still be lawful, and would not entitle the prisoner to his discharge on habeas corpus. (*Barb. Crim. Law*, 497, 498.) There is nothing in the objection that the warrant was not issued immediately, even if the question was reviewable here. The delay in issuing the warrant of commitment was oc-

casioned by the bond and other proceedings on the part of the relator to appeal from the judgment, to the court of sessions of Monroe county, but as the cause was not removed by him in any manner from the special sessions, that court did not lose jurisdiction to issue the warrant, by the lapse of time. This was expressly held in the case of *The People* v. *Yates General Sessions*, (5 *Wend.* 110.)

No seal was necessary to the warrant of commitment. The statute only provides that it shall be "under the hand" of the magistrate.

I am of opinion, therefore, that the relator was properly remanded on the habeas corpus, and that the decision of the special county judge should be affirmed.

[FOURTH DEPARTMENT, GENERAL TERM, at Rochester, March 5, 1872. *Mullin*, P. J., and *Johnson* and *Talcott*, Justices.]