(78 Misc. Rep. 666.)

### PEOPLE ex rel. MURRAY v. BECKER, Sheriff.

(Supreme Court, Special Term, Oneida County. November 16, 1912.)

1. CRIMINAL LAW (§ 1208*)—PUNISHMENT—INDETERMINATE SENTENCE.

Penal Law (Consol. Laws 1909, c. 40) § 2189, provides that a person never before convicted of a crime punishable by imprisonment in the state's prison, who is convicted of a felony other than murder in the first or second degree and sentenced to the state's prison, shall be given an indeterminate sentence. *Held*, that under section 21, providing that the provisions of the law shall be construed according to their fair import, section 2189 did not apply only to those persons who had been previously convicted of a felony in New York; and hence where accused, on being convicted of a felony, was shown to have been previously convicted in Ohio of two crimes for which he would have been punishable by imprisonment in the state's prison in New York, had they been committed there, he was not entitled to an indeterminate sentence under section 2189.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 3281–3287, 3289–3295; Dec. Dig. § 1208.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. CRIMINAL LAW (§ 1212*)—SENTENCE—HABITUAL CRIMINAL.

     Where accused was indicted and convicted of carrying a concealed weapon without a license, that the indictment did not charge him with being an habitual criminal, or with having been previously convicted, did not require the court to treat him as a first offender; but, on application for sentence, the court was entitled to ascertain his prior criminal record and sentence him accordingly.

     [Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 3303; Dec. Dig. § 1212.*]

Habeas corpus by the People, on the relation of Frank Murray, against Daniel P. Becker, Sheriff of Oneida County. Writ dismissed.

This is a proceeding instituted by a writ of habeas corpus and transferred to the above term. The relator, now in the custody of the sheriff of Oneida county, awaits conveyance to the state prison at Auburn, pursuant to a judgment of the Oneida Trial Term, held in October, 1912, upon a plea of guilty, convicting him of a felony in violating section 1897 of the Penal Law in carrying concealed upon his person a revolver without a written license therefor, and inflicting the punishment of imprisonment in such state prison for the period of seven years. When he was arraigned for sentence, it appeared that he had been convicted in the state of Ohio of two crimes for which, if they had been committed in the state of New York, and he had been convicted of the same in the state of New York, he would have been punishable by imprisonment in a state prison. In other words, if these crimes had been committed in the state of New York, they would have been felonies under our statutory definition.

P. H. Fitzgerald, of Utica, for relator.
Bradley Fuller, Dist. Atty., of Utica, for defendant.

DE ANGELIS, J. The sentence imposed by the Trial Term was a flat sentence, and the relator claims it should have been an indeterminate sentence, under section 2189 of the Penal Law, because, (1) as he had never before been convicted of a felony in the state of New York, he held the position of a "person never before convicted of a crime punishable by imprisonment in a state prison"; and (2) as he was not indicted as a second offender under section 1941 of the Penal Law, the Trial Term was bound to treat him as though he were a first offender, in pronouncing judgment. After careful consideration of the provisions of the Penal Law, I have reached the conclusion that the punishment imposed by the Trial Term was legal.

[1] 1. A person, in order to be entitled to the benefit of an indeterminate sentence, must bring himself within the class described in section 2189 of the Penal Law, to wit, persons "never before convicted of a crime punishable by imprisonment in a state prison." The relator insists that the fair meaning of this provision of the law is that the former convictions must have been within the state of New York, else they could not have been punishable by imprisonment in a state prison, to wit, a state prison in the state of New York. I do not think this position is sound. The language, "convicted of a crime punishable by imprisonment in a state prison," seems to me to have been adopted as a generic description of the crime, and to have been used irrespective of the locality of the conviction or the place of punishment. It is the appropriate language to define in its broadest sense

what is regarded by the law of New York state as a felony. Indeed, it is the language of the Penal Law defining a felony, to wit:

"A 'felony' is a crime which is or may be punishable by * * * imprisonment in a state prison." Section 2.

Our Legislature does not seem to have been content to rest satisfied with the common-law classification of felonies, but early adopted a definition of a felony. The first edition of the Revised Statutes contained this definition of a felony:

"The term 'felony,' when used in this act, or in any other statute, shall be construed to mean an offense for which the offender, on conviction, shall be liable by law to be punished by death, or by imprisonment in a state prison." R. S. p. 4, c. 1, tit. 7, § 30.

This definition stood as the definition of "felony" down to the time when our Penal Code went into effect (chapter 676 of the Laws of 1881, in effect May 1, 1882). Our legislation relating to crimes sometimes defined a crime as a felony in specific terms, and at other times left the question as to whether a certain crime was a felony to the punishment prescribed for its violation, and therefore to the general statutory definition of a felony. Early the question was raised whether petit larceny was a felony under our original statutory definition of a felony. It was argued that petit larceny at common law was a felony, and that as our statute did not in specific terms state it to be a felony, although the punishment prescribed was not imprisonment in a state prison, it retained its character as a common-law felony. Ward v. People, 3 Hill, 395, 398. The language of Chief Justice Nelson in the Ward Case; referring to the section of the Revised Statutes above quoted, was this:

"This provision defines statute felonies, but does not interfere with those existing at common law untouched by the statute, of which the offense of petit larceny is one."

Although the dictum in the Ward Case is said to have been repudiated in Shay v. People, 22 N. Y. 317, and all doubt in the premises removed in People ex rel. Stetzer v. Rawson, 61 Barb. 619, and People ex rel. Loughlin v. Finn, 87 N. Y. 533, and the Legislature in express terms declared petit larceny to be a misdemeanor in section 535 of the Penal Code (now section 1299 of the Penal Law), still the question raised in the Ward Case was referred to as late as 1909 in People ex rel. Cosgriff v. Craig, 195 N. Y. 190, 193, 88 N. E. 38. If the Legislature had used the expression "a person never before convicted of a felony" in section 2189, instead of the language adopted, a question might have arisen in reference to offenses committed in our sister states or other countries, which might be felonies there and not here, and our Legislature seems to have safeguarded the situation by confining the crimes to those offenses deemed felonies in our state.

What reason could the Legislature assign for saying that a man convicted of an infamous crime in a sister state, a crime on the conviction of which in this state he would have been sentenced to imprisonment in a state prison in this state for a long period, and later convicted of a serious crime in this state, should receive punishment

as though he never had been before convicted of a crime, and be a participant of all the consideration of a first offender?· While I recognize that a court is powerless to supply a substantial defect in legislation, at the same time, where language is susceptible of two constructions, that construction should be adopted which carries out more nearly what appears to be the general legislative design upon the subject.

The courts are relieved from a narrow and technical construction of the provisions of the Penal Law under the rule laid down in section 21 of the Penal Law, to wit:

"The rule that a penal statute is to be strictly construed does not apply to this chapter or any of the provisions thereof, but all such provisions must be construed according to the fair import of their terms to promote justice and effect the objects of the law."

The legislation now existing in section 2189 of the Penal Law had its origin in chapter 425 of the Laws of 1901, which supplied section 687a to the Penal Code, and began with the words, "A person never before convicted of a crime punishable by imprisonment in a state prison," etc., which language has been continued in the various amendments down to the present time. Section 687a of the Penal Code was amended by chapter 282 of the Laws of 1902, and in that amendment the Legislature practically said that the words last above quoted were used as a definition of a felony, because in that amendment, in using the words, "In any other case whenever any person, never before convicted of a felony," etc., it described just such a person as was described in the introduction of the section. The language last above quoted is used in the same sense in the amendment to such section made by chapter 36 of the Laws of 1906. This section was amended again by chapter 737 of the Laws of 1907, and was transferred to the Penal Law, becoming section 2189 thereof, by virtue of chapter 88 of the Laws of 1909. This section was thereafter amended by chapter 282 of the Laws of 1909, which amendment left it in its present form.

Among other instances of the use of language like that adopted in section 2189 of the Penal Law to define a conviction of a felony may be noted section 2185, which provides for the imprisonment of certain male persons between the ages of 16 and 30 in the New York State Reformatory at Elmira. The language is:

"A male between the ages of sixteen and thirty, convicted of a felony, who has not theretofore been convicted of a crime punishable by imprisonment in a state prison," etc.

The original act for the creation of "the State Reformatory," now the New York State Reformatory, was chapter 427 of the Laws of 1870. ¡Section 9 of the act carefully excluded from the right to admission to that institution any person known to have been previously sentenced to "a state prison in this or any other state or country." This act, as amended by chapter 207 of the Laws of 1876 (section 4), excluded from such right to admission persons known to have been previously sentenced to a· state prison or penitentiary on conviction of a felony in this or any other state or country. As already stated,

the Penal Code went into effect May 1, 1882, and section 700 thereof excluded from such right to admission persons who had theretofore been convicted of *crime*. Chapter 711 of the Laws of 1887 was entitled:

"An act to revise, consolidate and amend the several acts relating to the New York State Reformatory at Elmira."

This act did away with the conditions for admission to the institution, which had been repealed by implication in section 700 of the Penal Code and had become obsolete, and in section 9 thereof by implication recognized section 700 of the Penal Code as prescribing the conditions for such admission. Chapter 145 of the Laws of 1888 amended section 700 of the Penal Code, so as to exclude from such right to admission a person who had theretofore been convicted of a crime punishable by imprisonment in a state prison; the language being:

"A male between the ages of sixteen and thirty, convicted of felony, who has not theretofore been convicted of a crime punishable by imprisonment in a state prison, may," etc.

It will be observed that the language of section 700 as originally enacted excluded from the reformatory a person who had been convicted of *crime,* any crime. This legislation may have been induced by the overcrowded condition of the Reformatory. It necessarily excluded from the institution a person convicted of a misdemeanor. The amendment of 1888 restored the privileges of the institution to persons who had not been convicted of crimes punishable by imprisonment in a state prison. Chapter 378 of the Laws of 1900 was an act entitled:

"An act to revise, consolidate and amend the several acts relating to the New York State Reformatory at Elmira."

This act likewise recognized by implication that section 700 of the Penal Code prescribed the conditions of admission to the institution. *When section 687a of the Penal Code, above referred to, being the first act providing for an indeterminate sentence, went into effect, section 700 of the Penal Code existed, containing this identical language as to one never before convicted of a crime punishable by imprisonment in a state prison.* The present Penal Law took effect February 17, 1909, and superseded the Penal Code; section 700 of the latter having been superseded by section 2185 of the former, later amended by chapter 282 of the Laws of 1909 as therein stated. The present Prison Law also took effect February 17, 1909, and article 11 thereof superseded all the legislation theretofore governing the New York State Reformatory at Elmira, with one exception not affecting this discussion. To make assurance doubly sure, the Legislature expressly repealed the former acts governing the Reformatory, except certain provisions in chapter 711 of the Laws of 1887 not affecting this discussion as above stated. Section 307 of the Prison Law (Consol. Laws 1909, c. 43) also recognizes the Penal Law as prescribing the conditions of admission to the Reformatory.

Is it probable that the Legislature intended to permit a person who had been convicted of a felony in a sister state to enjoy the privileges of this institution founded for the purpose of reforming its inmates, and to deny such privileges to a person who had been convicted of a felony in the state of New York? It seems to me not. It is true that there are instances in the Penal Law where reference is made in explicit terms to convictions of a felony under the laws of other states, governments, or countries, as, for example, section 1941, providing for the punishment of a second offense of felony; but that is no reason why a construction should not be put upon section 2189 consonant to the spirit, purpose, and language of the Penal Law as a whole.

[2] 2. The trial court was not bound to treat the relator as a first offender because he chanced not to have been indicted as a second offender. As the relator was not indicted pursuant to section 1941 of the Penal Law as guilty of a second offense, cases like People v. Sickles, 156 N. Y. 541, 51 N. E. 288, do not apply. It will be remembered that in the Sickles Case the counsel for the defendant argued in vain that, in violation of the Constitution, the defendant was deprived of his liberty without due process of law, for the reason that the trial court permitted proof of his former conviction before the jury. He insisted that the former conviction could only be shown on the application for judgment or sentence after the trial. He urged that the admission of proof of the former conviction was highly prejudicial to the defendant, in that it permitted the jury to draw an unfair inference against him, and destroyed his right to the presumption of innocence guaranteed in the provision of the Constitution adverted to. That argument would have been perfectly good, if the section of the Penal Code then under consideration had not made the former conviction a part of the crime. Here, however, as already pointed out, the former conviction is not made part of the crime charged, and the sentence pronounced by the Trial Term is fully sustained in People v. Rosen, 150 App. Div. 595, 135 N. Y. Supp. 1049, which case, indeed, goes farther than is necessary to defeat the relator's contention in the case at bar.

It follows from these views that the writ should be dismissed, and the relator remanded to the custody of the sheriff, with instructions to carry out the sentence of the Trial Term.

Ordered accordingly.