PEOPLE ex rel. COHEN v. RATTIGAN, Warden.

(Bronx County Court. November 5, 1915.)

CRIMINAL LAW ⊜1211—INDETERMINATE SENTENCE—PRIOR "CONVICTION."

A person who has been found guilty by a jury, or has pleaded, and whose sentence has been suspended, has been "convicted," within Penal Law (Consol. Laws, c. 40) § 2189, providing that a person never before "convicted" of a state prison offense, on being convicted and sentenced to state prison, shall be given an indeterminate sentence, and is subject to section 1941, providing for a definite sentence on a second conviction—Code Cr. Proc. § 470a, providing that, if judgment be suspended after plea or verdict of guilty, judgment may not be pronounced after expiration of the longest period for which defendant might have been sentenced, unless he shall have been convicted of another crime during such period, indicating that he was considered as convicted of the offense as to which judgment was suspended; section 470b providing that, for purpose of indictment and conviction of a second offense, the plea or verdict and suspension of judgment shall be regarded as a conviction; Penal Law, § 21, providing that the rule that a penal statute is to be strictly construed shall not apply to such law, but all its provisions must be construed according to their fair import, to promote justice, and effect the objects of the law; and the Penal Law being required to be construed in connection with the provisions of the Code of Criminal Procedure bearing on the same subject.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 3302; Dec. Dig. ⊜1211.

For other definitions, see Words and Phrases, First and Second Series, Conviction.]

Habeas corpus by the People, on relation of Hyman Cohen, against Charles F. Rattigan, Warden of Auburn Prison. Writ dismissed, and relator remanded to custody.

Order affirmed, 157 N. Y. Supp. 1140.

K. Henry Rosenberg, of New York City, for relator.

Francis Martin, Dist. Atty., of New York City (Richard H. Mitchell, of New York City, of counsel), for respondent.

GIBBS, J. The relator, Hyman Cohen, was convicted in this court, by verdict of jury of robbery in its first degree, on the 12th day of April, 1915, and on the 16th day of the same month was sentenced to state prison to a definite sentence of 15 years and 1 month. After conviction, in reply to the questions of the clerk of the court regarding his pedigree, he admitted that in 1909, under the name of Herman Cohen, he was convicted of grand larceny in the second degree, in the Court of General Sessions of the Peace of the City and County of New York, and that he had been discharged from custody on a suspended sentence. The above facts are conceded by the relator. On the 16th day of October, 1915, on application of relator's counsel, a writ of habeas corpus was allowed by this court, requiring the warden of Auburn Prison (the relator's place of detention) to produce the relator in obedience to the order contained in the said writ, and in accordance with the order the relator was brought down to this county

and placed in the custody of the sheriff, pending a determination herein.

In the relator's traverse to the return, he alleges that his commitment to a definite term of imprisonment was in violation of law, as for purposes of sentence he·was a first offender and should have been sentenced to an indeterminate term, since *his plea of guilty in the Court of General Sessions followed by a suspension of sentence is not in law deemed a conviction.* The question raised is an important one, and does not appear to have been adjudicated in its present form before the courts of this state.

The relator bases his contention upon the case of People v. Fabian, 192 N. Y. 443, 85 N. E. 672, 18 L. R. A. (N. S.) 684, 127 Am. St. Rep. 917, 15 Ann. Cas. 177, and argues that the law under that decision is declaratory of the proposition that, where a suspension of sentence follows a conviction, it is not a conviction, *because no final judgment has been entered.* Fabian was indicted for having voted at an election "not being a qualified voter." It appears that Fabian had previously been convicted of the crime of burglary in the first degree, which is a crime punishable by imprisonment in a state prison. A demurrer to the indictment was interposed and sustained by the Court of General Sessions. The people appealed, and the Appellate Division reversed the judgment and overruled the demurrer (126 App. Div. 89, 111 N. Y. Supp. 140); Clarke, J., dissenting. Fabian appealed to the Court of Appeals, and the judgment of the Appellate Division was reversed, and the judgment of the Court of General Sessions sustaining the demurrer to the indictment affirmed. 192 N. Y. 453, 85 N. E. 672, 18 L. R. A. (N. S.) 684, 127 Am. St. Rep. 917, 15 Ann. Cas. 177.

The Court of Appeals in the Fabian Case construed the term "conviction" in the light of the provisions of the Constitution of the state and the Election Law statutes as to what persons are to be excluded from the right of suffrage, and the doctrine laid down in the case is that (quoting in part from the syllabus):

"A person against whom sentence has been suspended after verdict has not been convicted within the meaning of the Constitution or the statutes enacted in pursuance thereof, and is not liable to indictment for voting at an election, 'not being qualified therefor,' in violation of the provisions of the statute. Penal Code, § 41—1, as amended by Laws 1901, c. 371."

Bartlett, J., speaking for the court in this case, states:

"Bearing in mind the character of the legislation which the constitutional provision was designed to authorize, I think the prevailing rule of the common law as to what sort of a conviction served to disqualify a witness indicates what sort of a conviction the framers of the Constitution contemplated as such as should cause a citizen to be excluded from the right of suffrage. They were dealing with the question of the disqualification of voters. They proposed to let the Legislature disqualify voters who had been or should be convicted of any infamous crime. Under the common law, witnesses who had been convicted of infamous crimes were disqualified from testifying, but were not deemed to have been thus convicted unless the record established the rendition of a judgment upon the verdict. People v. Herrick, 13 Johns. 82, 7 Am. Dec. 364; People v. Whipple, 9 Cow. 707. It was the judgment, and that

only, which was received as the legal and conclusive evidence of the party's guilt for the purpose of rendering him incompetent to testify. Greenleaf on Evidence, § 375." 192 N. Y. 447, 448, 85 N. E. 674 (18 L. R. A. [N. S.] 684, 127 Am. St. Rep. 917, 15 Ann. Cas. 177).

A careful reading of the case discloses that within the meaning of the Constitution and the purview of the Election Law, a voter has not been convicted unless the verdict against him has been followed by a judgment. In order to disqualify him there must be a judgment of conviction. A verdict of conviction only falls short of the constitutional provision that "the Legislature shall enact laws excluding from the right of suffrage all persons convicted of bribery or of any infamous crime" (section 2, art. 2, State Constitution), and the Election Law that "no person who has been convicted of a felony shall have the right to register for or vote at any Election unless he shall have been pardoned and restored to the rights of citizenship" (Laws 1901, c. 654, § 2, subd. 10).

It is clear, therefore, that the Fabian decision and the principles laid down in it *govern the political rights* of individuals convicted. (The right to vote is a political right. People v. Barber, 48 Hun, 198.) In other words, it relates to those rights which may be exercised or practiced by the citizen in the formation or administration of government. People v. Morgan, 90 Ill. 558. Under our Constitution and within its meaning of political rights, every citizen is given the right to participate in the establishment and administration of government, if he does not stand convicted of an "infamous crime." No doubt the framers of the organic law meant in this connection, something more than the verdict of guilty. They meant to exclude from the body politic *convicts* in the strict sense of the word. Black's Law Dictionary defines a "convict" as:

"One who has been condemned by a court; * * * usually spoken of condemned felons or the prisoners in penitentiaries." Molineux v. Collins, 177 N. Y. 395, 69 N. E. 727, 65 L. R. A. 104; Morrisey v. Pub. Co., 19 R. I. 124, 32 Atl. 19; In re Aliano (C. C.) 43 Fed. 517; Jones v. State, 32 Tex. Cr. R. 135, 22 S. W. 404.

In the sense of our penal laws and the Code of Criminal Procedure of this state, as will be seen by citations of several sections of the same, it will be seen that a convicted person is one who has been found guilty by a jury or who has pleaded guilty, *regardless of the final judgment*. The history of the constitutional provision herein referred to is to be found in the Fabian Case on pages 447 and 448 of 192 N. Y., 85 N. E. 672 (18 L. R. A. [N. S.] 684, 127 Am. St. Rep. 917, 15 Ann. Cas. 177). I do not find, after a *most exhaustive study* of the Fabian Case, any authority for disturbing legislative enactments which refer to convictions as the judicial ascertainment and declaration of guilt.

The relator having been duly convicted of grand larceny in the second degree, a crime punishable by imprisonment in a state prison, in May, 1909, and subsequently for the second time of a felony on April

12, 1915, to wit, robbery in the first degree, could not be sentenced under section 2189 of the Penal Laws, which reads as follows:

"A person never before convicted of a crime punishable by imprisonment in a state prison, who is convicted in any court in this state of a felony other than murder first or second degree, and sentenced to a state prison, shall be sentenced thereto under an indeterminate sentence, the minimum of which shall not be less than one year, or in case a minimum is fixed by law, not less than such minimum; otherwise, the minimum of such sentence shall not be more than one-half the longest period and the maximum shall not be more than the longest period fixed by law for which the crime is punishable of which the offender is convicted. The maximum limit of such sentence shall be so fixed as to expire during either of the following months: April, May, June, July, August, September and October."

The plain requirement of law was that he be sentenced to a definite term of imprisonment, which was accordingly done. The circumstance that after his first conviction he was discharged from custody during his good behavior does not in any sense within the meaning of the Code of Criminal Procedure make him a first offender. I think that even a casual reading of sections 470a and 470b of the Code of Criminal Procedure makes this point clear to the exclusion of every doubt. Section 470a reads as follows:

"If the judgment be suspended, after a plea or verdict of guilty or after a verdict against the defendant upon a plea of former conviction or acquittal, the court may pronounce judgment at any time thereafter within the longest period for which the defendant might have been sentenced; but not after the expiration of such period, unless the defendant shall have been convicted of another crime committed during such period."

Thus it will be seen that if the court has suspended sentence on an offender, and the longest period for which he might have been sentenced has expired, the court cannot pronounce judgment, "unless the defendant shall have been convicted of *another* crime during such period." Can it be seriously questioned, therefore, that when the Legislature referred to "another crime" they regarded the first offense as a conviction on which judgment had been suspended?

Then section 470b provides:

"1. For the purpose of indictment and conviction of a second offense, the plea or verdict and suspension of judgment shall be regarded as a conviction, and shall be pleaded according to the fact. 2. The said plea or verdict and suspension of judgment may be proved in like manner as a conviction for the purpose of affecting the weight of the defendant's testimony in any action or proceeding, civil or criminal."

Thus it is apparent that an offender under a suspended sentence may be indicted under a suspended sentence as a second offender, and mandatorily receive a definite sentence of imprisonment for "not less than the longest term nor more than twice the longest term, prescribed upon a first conviction." Section 1941, subd. 2, Penal Law. If, after an offender has received a suspended sentence, he may be indicted as a second offender and punished as such, there does not seem to be any reason why he should receive the benefits of section 2189 of the Penal Law referring to first offenders. Section 21 of the Penal Law provides that:

"The rule that a penal statute is to be strictly construed does not apply to this chapter or any of the provisions thereof, but all such provisions must be construed according to the fair import of their terms, to promote justice and effect the objects of the law."

And in People v. Rugg, 98 N. Y. 537, it was held that the Penal Law must be construed in connection with the provisions of the Code of Criminal Procedure bearing upon the same subject. In general, I think that the decisions of this state are grounded in the principle that it is the duty of the courts to place such construction upon statutes, even where a statute is susceptible of two constructions, that the construction which is to be adopted must be the one which more nearly carries out what appears to be the general legislative design on the subject. People ex rel. Frank Murray, Relator, against Daniel P. Becker, Sheriff of Oneida County, 78 Misc. Rep. 666, 138 N. Y. Supp. 771.

An examination of the history of these sections of the Code of Criminal Procedure shows that the provisions of law requiring that a person heretofore found guilty of a felony be deprived of the benefits of the indeterminate sentence are based upon sound public policy, which dictates that more severe punishment shall be imposed upon the unregenerate criminal than upon the first offender. The fact that in some cases the imposition of judgment is deferred by the merciful discretion vested in the court, and the judgment suspended during the offender's good behavior, does not relieve him from the stigma which he bears as a previous violator of the criminal law, or of the greater measure of punishment reserved for him, if he be again adjudged guilty of a felony. The history of the indeterminate sentence law clearly indicates that it was enacted because the humane and enlightened conscience of modern society desires within certain limitations to save or reform the first offender. It is part of a scheme of law adopted in this state, and most of the states of the Union, and most of the civilized countries of the world, denoting a general purpose to soften the harshness of the law against those who have violated its mandates for the first time. But where the individual shows such perverse and unsocial tendencies as are manifest in a second offense (whether judgment has been suspended or not) the well-being of the state demands a greater measure of punishment and repression.

The suspension of sentence only means that the offender is relieved during good behavior from the penal consequences and civil disabilities that by process of law follow conviction. Among these is the right to the exercise of the franchise. It cannot be reasonably argued that the suspension of sentence wipes out the guilt of the offense, or places the offender in his original position prior to his conviction. His guilt, whether after trial or plea of guilty *has been judicially ascertained and determined* and he remains for all time, even if he be pardoned by the executive power of the state, a convicted person, liable to indictment as a second offender and to punishment as such. In the Carlesi Case, 233 U. S. 51, 34 Sup. Ct. 576, 58 L. Ed. 843, the plaintiff in error argued—after being convicted in the Court of Gen-

eral Sessions of forgery as a second offender—that he could not be indicted, convicted, and punished as a second offender because of a pardon granted him by the President of the United States for the offense of which he had been convicted prior to the forgery conviction as a second offender. He took the position that the pardon not only releases the punishment, but blots out the existence of guilt, so that for all legal purposes he stood before the court as if he had never committed the offense. The court said in its opinion by Mr. Chief Justice White (quoting from syllabus):

"The granting of a pardon by the President for a crime committed against the United States does not operate to restrict the power of a state to punish crimes thereafter committed against its authority, and to prescribe such penalties as it deems appropriate in view of the nature of the offense and the character of the offender, taking in view his past conduct."

And the court further held:

"That the second offense provisions of the Penal Code of New York are not unconstitutional as applied to a person convicted of the same crime of which he had been previously convicted by the United States and pardoned by the President."

The reasoning of all the cases examined appears to be that the state does not undertake to punish the offender for his first offense in subjecting him to a longer term of punishment upon his second offense, but only increases the penalty (not in any way depriving him of his rights—civil or otherwise) which is the consequence that directly flows from the said first offense, and which in no wise depends upon the pronouncement of the judgment. The state, in the exercise of its sovereign power in dealing with violators of the law, has the inherent right to declare—and in this respect it is paramount and supreme—under what circumstances offenses against itself shall be deemed as involving a smaller or greater amount of moral turpitude. In People v. Sickels, 156 N. Y. 541, 51 N. E. 288, the court said:

"The Legislature has plenary power to make laws for the community, in its social and aggregate capacity, within limits set by the Constitution. It is its duty, and it has the amplest power, to prescribe the punishments for offenses against the laws of the state, and there is no arbiter beyond the state itself to determine what legislation is just. Punishment is inflicted, because it is right that the state, in the interests of society, of which it is the organized expression, should prescribe it as a measure for the prevention of crime. In so doing, it is right that the degree of punishment should be measured by the criminality of the individual, and that such an example shall be made as will tend to establish a deterrent influence over the members of society. Reason suggests that the persistent and hardened offender needs a severer punishment. The previous punishment having failed to reform him, his guilt, upon his further offending, is greater, and, being so, severer treatment is needed, to compel him to reform his ways, and in furtherance of the effort to prevent crime. In enacting that, upon a conviction for a second offense, the punishment shall be one of greater severity, the Legislature has acted in accordance with the dictates of a wise policy and has invaded no constitutional right."

For the reasons aforesaid, the writ of habeas corpus is dismissed, and the relator remanded to the custody of the warden of the Auburn Prison, or his duly authorized representative. Settle order on notice.